ORIGINAL

James A. Barch
Plaintiff Pro Se
16101 Escobar Avenue
Los Gatos, CA 95032
(408) 978-5727

FILED IN THE
ATES DISTRICT COURT
RICT OF HAWAII

JUN 0 5 2006

at ____ :ock and ____ min. ____ M
SUE BEITIA, CLERK

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| JAMES A. BARCH, | ) CIVIL NO. 04-00712 SOM-BMK |
| Plaintiff, | ) (Other Civil Action) |
| | ) |
| vs. | ) EXHIBIT "F" OF |
| | ) PLAINTIFF'S OPPOSITION TO |
| STATE OF HAWAII DEPARTMENT OF LABOR ) | DEFENDANT'S MOTION TO |
| & INDUSTRIAL RELATIONS; JOHN DOES 1-20 ) | DISMISS COMPLAINT |
| JANE DOES 1-20; DOE GOVERNMENT ) | |
| AGENCIES 1-20; DOE CORPORATIONS 1-20; ) | |
| DOE PARTNERSHIPS 1-20; JOHN DOES 1-20; ) | |
| JANE DOES 1-20; ) | |
| Defendants. ) | |

Hearing:

Date:   July 3, 2006
Time:   9:00 A.M.(Hawaii Time)
Judge:  Hon. Susan Oki Mollway

DATED:  Los Gatos, California, June 5, 2006.

*James A. Barch*

JAMES A. BARCH
Plaintiff Pro Se

**CRC Complaint # 02-HI-002**

June 2, 2006

James A. Barch
16101 Escobar Ave.
Los Gatos, CA 95032
(408) 978-5727

Mr. Willie Alexander, Chief of External Enforcement
U.S. Dept. Of Labor, Civil Rights Center
Francis Perkins Building, Room N–4123
200 Constitution Ave., N.W.
Washington, D.C. 20210

Dear Mr. Alexander:

This is the second installment of my critique of the many errors, omissions, and biases in the Final Agency Action of August 11, 2005 by CRC Director Annabelle T. Lockhart.

I repeat my request that you not only re-open my case and reverse the FAA in my favor, based on this evidence, but also that you send a copy of this critique to the official in the U.S. Department of Labor who is legally responsible for investigating unethical and illegal misconduct by CRC staff, including the CRC Director.

For in writing this critique, I am overwhelmed by the cumulative realization that almost every single assertion by Director Lockhart is false, based on errors and omissions, based on bias and prejudice, based on fundamental failures to investigate and obtain obviously necessary evidence, based on willful disregard of evidence already at CRC, based on consistent failure to cite necessary evidence, and always one-sided against me.

Thus, Director Lockhart appears guilty of <u>malice</u>: consistently making false statements when she knew, or had reason to know, the statements were false – or acting with repeated negligence and reckless disregard of whether her statements were false.

1

Since Director Lockhart implied in her FAA that she based her FAA on full knowledge of the evidence, she repeatedly failed her legal responsibility to make sure that her statements were true and based on all of the necessary evidence.

As a result of Director Lockhart's astounding number of failures, errors, omissions, bias, and malice, she has deprived me of justice (after a painful wait of 3¾ years), she has caused me mental suffering and physical exhaustion, and she has caused me to make this current appeal effort, which is very time-consuming and emotionally-draining -- at a critical time when I desperately need my very limited time and energy for my lawsuit against DLIR.  In sum, Director Lockhart's Final Agency Action is corrupt, incompetent, and inexcusable -- and has done me grievous harm.

*   *   *

I will continue my critique from where I left off at the end of my first installment dated April 1 to May 10, 2006:  at the third paragraph of page 2 of the FAA.

1) Director Lockhart failed to state that I vigorously disputed my ex-employer's written statement to DLIR dated February 1, 2000.  I sent CRC a list explaining that in just 4 pages my ex-employer knowingly committed about 25 lies.

2) For example, my ex-employer falsely denied that they treated me with repeated abuse and negligence, and falsely claimed that I quit my job voluntarily because I was performing my job poorly.  The facts and evidence disprove these two claims, but Director Lockhart failed to even discuss the evidence or the dispute. The most important two facts are that I was forced to quit because I could no longer tolerate my bosses' abuse of me and because my health had totally collapsed.  CRC has a copy of my resignation letter that cites abuse by my bosses and job-stress problems as my reasons for quitting.  Director Lockhart failed to mention my resignation letter, or my two letters to my parents and to a former co-worker (both written just after I quit HBH) in which I detailed the real reasons I quit HBH.  Director Lockhart also failed to mention my extensive medical records before, during, and after my job resignation that prove that I was

forced to quit my job involuntarily due to severe job-stress injuries. And most importantly, Director Lockhart also failed to mention the medical certifications from six different doctors and two government agencies (DHS and SSA) all of whom agreed that I became totally disabled as of October 14, 1999 – the very same day I was forced to quit my job. Director Lockhart also failed to mention that I have never been able to work a job since I quit HBH – 6¾ years ago. These facts (and the medical and personal evidence that proves these facts) prove beyond any question that I was forced to quit my job because of job-stress injuries and permanently damaged health – not because I was performing my job poorly. On the contrary, at the time that I quit my job I was performing my job well (I had met my HBH-required number of billable hours for about 4 weeks.) But the 6-month all-out effort I had made to save my job, under grossly negligent and abusive bosses, and under impossible work conditions, finally destroyed my health permanently. Director Lockhart reveals her incredible bias by willfully disregarding the facts and evidence that proves I quit because I was totally and permanently disabled. This fact has also been certified by the U.S. Department of Education's review of my medical records. Why is this basic fact accepted by 6 doctors, DHS, SSA, and DOE, but denied by CRC? Director Lockhart doesn't even feel an obligation to offer a convincing explanation for why I quit my job – or to support her prejudiced opinion with a single cited piece of evidence. She fails to explain why I would quit my job after I had tried desperately for 6 months and had finally saved my job. My medical records prove that I was healthy and superbly fit before my job, but permanently and totally disabled after my job. The obvious conclusion from the evidence is that my effort to save an impossible job destroyed my health. No one becomes totally disabled if they are being lazy. Instead, people become totally disabled by working far too hard for far too long. But Director Lockhart willfully ignores and omits this necessary conclusion. Why didn't Director Lockhart conclude that the bosses who abused me also abused the truth in order to avoid financial responsibility for forcing me to quit my job (through "constructive termination") and for totally disabling me? She knows employer's dishonest defenses very well from her 25 years of experience at CRC.

3

3) Another example of my ex-employer lying to the state is the false claim that I was "counseled on multiple occasions." That is a brazen lie. My bosses were negligent in the extreme. It was I who repeatedly took the initiative to tell my boss that the cases I was assigned were unworkable, but my boss repeatedly told me that things would work out fine if I just persevered. At the third ESARO hearing in March 2001, my boss admitted that she could not remember a single specific "solution" or "counseling" advice for the job problems I was reporting to her repeatedly. Director Lockhart failed to see the obvious pattern of numerous lies and not remembering by my ex-employers 4 employee-witnesses that DLIR's hearing officer also willfully ignored. As always, Director Lockhart failed to demand, and failed to cite, a single piece of documentary evidence to prove the false claim that I was "counseled on multiple occasions." As always, Director Lockhart accepts my ex-bosses' lies and DLIR's lies without question and without proof – and consistently disregards my extensive, irrefutable evidence to the contrary. Director Lockhart's "opinion" is overwhelmingly one-sided and consistently prejudiced.

4) Another "knowing misstatement, misrepresentation, and omission of material fact" by my ex-employer and by Director Lockhart is the false claim that I was "placed on probation for three months." The truth is that my ex-employer put me on "probation" from the first day on the job to my last day on the job, 50 weeks later. CRC has this fact in the ESARO records (of the third hearing in March 2001) along with the fact that in the ESARO hearing on May 7, 2001 my boss's ex-assistant, Lenore, testified under oath that HBH considered me a "star" employee during my first 6 months on Kauai. Director Lockhart failed to see yet another instance of HBH's long pattern of mistreating me in the fact that my boss kept me on "probation" for all 12 months of my employment, even when I was a "star" employee for 6 of those months.

5) Director Lockhart also knowingly misrepresented and omitted material facts about how my boss changed the terms of my remuneration, from salary to hourly

4

– unilaterally, without discussion, without warning, and without even one day's notice. The loss of my salary was "effective immediately." My boss also refused to give me even one week to meet my quota and save my salary. (I succeeded in both goals despite my boss's ruthless refusal to help me succeed.) CRC has knowledge of these facts in the Memorandum dated September 19, 1999 from my boss to me, in my resignation letter dated October 14, 1999 to my boss, and in my sworn statement to HBH's worker's compensation insurance adjuster in March 2000, I recall (which I gave to the ESARO hearing officer in July 2001), and in my sworn testimony at the ESARO hearing on May 8, 2000. As always, Director Lockhart's omission of material facts accepts HBH's DLIR's lies without question and without any in Director Lockhart's prejudicial, biased opinion, and totally fails to cite the entire evidence to the contrary.

6) One of Director Lockhart's most egregious "knowing misstatements, misrepresentations, and omissions of material fact" is her statement that I left work voluntarily for personal reasons and without good cause. This is a most important falsehood. Hawaii Revised Statutes states that "good cause" is met when an employee quits a job due to health reasons. My medical records at the time I quit my job prove that I was chronically and acutely ill. And my medical records ever since I quit my job prove that I was totally and permanently disabled by the job. This is the clearest evidence possible of my having "good cause" to quit my job for health reasons. Thus, I was legally entitled to the unemployment benefits that DLIR's UID and ESARO wrongfully denied me.

Furthermore, neither UID nor Director Lockhart ever fulfilled their legal obligation to specify the "personal reasons" that they falsely claim caused me to quit my job. Also, neither UID nor Director Lockhart cite a single piece of evidence to prove their false claim of my "personal reasons" for quitting my job. In stark contrast, the ESARO records and my medical records provide extensive evidence that proves the opposite of what UID and Director Lockhart falsely claim.

7) Director Lockhart also omits many material facts that I told CRC about regarding UID failing to follow state laws and administrative rules in my case. First, UID committed "disparate treatment" by requiring me to submit to a 1 to 2 hour phone interview, but UID did not require the same of HBH. UID merely asked HBH for a brief written statement. Second, UID required me to submit numerous (40+) pages of documentary evidence, but UID did not require HBH to submit even one page of evidence. Third, UID accepted HBH's false claims instead of my true claims without any evidentiary basis or logical explanation in their decision. This fact shows UID's prejudice and bias. Fourth, UID never asked me to provide a note from my health care providers – but then faulted me for not providing evidence from my health care providers. Fifth, when I later provided a letter from my main health provider at the time I quit my job, ESARO's hearing officer rejected its validity simply because it was dated 6 months after I quit – yet he accepted documents and testimony from HBH 20 months after I quit. Sixth, when I wrote a letter to UID complaining of their improper conduct in my case, UID failed to file my critical letter in my case file, but filed my letter separately in their warehouse. Seventh, as a result of UID's misfiling of my letter, UID failed to include my letter criticizing UID for misconduct in the official ESARO record. Only my discovery of this UID omission of material evidence, and my explicit request for a copy, caused UID to find and send my letter to ESARO in May 2001 – 14 months later. Eighth, after the clerk who took over my case gave me a medical waiver based on my doctor's request and my medical records, UID transferred her off my case, and I was never able to communicate with her again.

8) Director Lockhart also misstates and omits material facts by falsely claiming that I was called to be a substitute teacher for 4th grade to 6th grade classes, after which I had a panic attack, and refused to report to work. First, her statement is erroneous. Second, she failed to cite any evidence. And third, she failed to state the source of her misinformation. I doubt that she got any evidence directly from the school. I suspect that she got her misinformation from the State Labor Dept. (DLIR). The DLIR has a proven pattern of lying to other government entities,

including CRC. The DLIR also has a very strong motive to lie to CRC, to avoid financial liability for their violations of law and their damages to my health and life. Now, for the facts: I received an automated call to teach kindergarten, which I did not sign up for, and for which I was not qualified to teach. Those two errors by the school triggered my job-stress Post-Traumatic Stress Disorder, which took the form of an anxiety attack. I would not have had an anxiety attack if the school had properly asked me to teach a 4th to 6th grade class, because I had signed up for that school level and I felt qualified to teach that level of children's cognitive development.

Director Lockhart's misstatement and omission of material facts gives the false impression that I refused work that I had signed up for, but the fact is that I did not. Since the school had no right to call me to teach a grade that I did not sign up for and was not qualified to teach, I responsibly declined the assignment.

Director Lockhart's lack of knowledge of the facts shows, as always, that she accepted, without question and without investigation, the falsehoods that DLIR intentionally misinformed her of; that she failed to check her facts by asking me for my side of this story; and that she formed her erroneous opinion in a prejudicial, biased manner. Director Lockhart repeats this pattern of failure to investigate fully, false statements, omission, and bias throughout her entire FAA.

9) Director Lockhart committed "knowing misstatements and omissions of material facts" when she misrepresented my five requests to ESARO to postpone my own appeal hearings as "being because of (my) inability to attend the hearing."

As always, Director Lockhart willfully omitted stating the reasons for my "inability to attend." Director Lockhart has at CRC my five letters to ESARO in 2000, and thus knew, or should have known, that I always explained to ESARO that I needed more time because of my job-stress disabilities. Specifically, I recall explaining that trying to analyze and type up all of the abuses and injuries caused to me by

my ex-bosses and my work conditions was extremely re-traumatizing, causing me intense anger, anxiety, depression, and exhaustion. I found it extremely difficult to concentrate on such painful and health-and-life-destroying experiences. I was medically certified by the state and by several private doctors as suffering from Post-Traumatic Stress Disorder, Major Depression, Anxiety Disorder, Chronic Fatigue, and many other symptoms that interfered with my ability to function, including trying to prepare for my own appeal hearings. Director Lockhart's knowing omission of these very material facts – and the false insinuation she creates of me trying to evade my own appeal hearings for suspiciously vague reasons (when she knew that my reasons were very specific and valid) reveals yet again Director Lockhart's inexcusable prejudice, bias, and malice.

10) Director Lockhart also failed to make it clear that my clinical psychologist requested UID to grant me a medical waiver on March 15, 2000 – that is, just two days after I suffered a major anxiety attack immediately following the school's improper request that I teach kindergarten, which I did not sign up for and was not qualified to teach.

11) Director Lockhart committed "knowing misstatements and omissions of material facts" by the way she misrepresented the expiration of my medical waiver. First, she fails to state that UID was wrong to only grant me a medical waiver for three months, when my doctor and my medical records proved that I was totally disabled and would not be able to return to work in only three months. Second, by May 2000, I had received Total Disability certification from the State's doctor, and I had received State Disability Insurance – further proof that two other state agencies were treating me properly as being totally disabled, but that UID was not. Third, I cannot recall, without a time-consuming records search, why I did receive a second three-month medical waiver from UID. It may be that I was told that it was now irrelevant, because I would not be able to return to work anytime soon (I will never be able to return to work now that DLIR has permanently disabled me). It may be that I applied and was denied a second waiver from UID. Or it may be

8

that I was to sick and busy with other demands to remember to re-apply. In any case, Director Lockhart's omission of the above material facts shows either her failure to cite the full evidence or her failure to tell the whole story, or both.

12) Yet again, Director Lockhart misstates, misrepresents, and omits material facts about ESARO's December 14, 2000 hearing.

First, ESARO transferred my case to a new hearing officer without notifying me.

Second, the new hearing officer scheduled the December 14, 2000 hearing in October or November 2000, but did not notify me until a month or two later, around December 2 or 3, 2000 – when any fair and impartial official would have known from my case file that I was severely disabled and needed as much fore-notice as possible. He could have easily given me one or two months' note, but he gave me less than two weeks notice.

Third, the new hearing officer intentionally misdirected my mailed notice 9thus depriving me of my full amount of time) by mailing my notice to an old address that I had not lived at for about six months. ESARO had my new address on my most recent 5 letters to them, so there was no excuse for the "mistake."

Fourth, the hearing was <u>not</u> initially designated for the purpose of considering my request for a continuance. The notice indicated the hearing was the beginning of my official appeal. As ESARO must have known from my case file, their abrupt action caused me terrible emotional duress and aggravation of my stress-injuries. There was no way that I would be prepared for a full-scale appeal process in less than two weeks, and there was no way that my very injured health could tolerate the acute and chronic stress of the appeal hearings.

I desperately pleaded with ESARO to postpone my appeal hearings indefinitely due to my total disability and severely vulnerable health. ESARO failed to

respond promptly to my desperate pleas – they just left me to agonize in uncertainty for days.  Eventually, an ESARO aide left me a phone message that curtly said, "The hearing officer denies your request.  He says you've had more than enough time to prepare."  A written note to this effect is in the ESARO record at CRC, so Director Lockhart should have known how to correctly describe these events – but she failed to do so.

In a panic, I made several phone calls and faxed several letters to ESARO, but again the hearing officer and his supervisor failed to respond in a prompt manner. On December 6, 2000, my psychiatrist wrote a letter directly to the ESARO supervisor stating that I was totally disabled, that the stress of an appeal hearing process was "medically contra-indicated for him at this time," and explicitly requested the ESARO supervisor to please postpone my appeal hearings until I was medically able to tolerate the stress of the hearings.  The ESARO supervisor completely disregarded my doctor's statement of facts, his medical opinion, and his request that she postpone my hearings.  She emphatically did not.

I wrote letters to the ESARO supervisor citing my legal rights under the Americans with Disabilities Act – which she failed to honor.  I hand-delivered numerous confidential medical records, including certification of my total disability by state and federal agencies – which she completely disregarded.  I delivered the same records to my U.S. and state representatives, who wrote letters of inquiry to her – but she lied to them, with many misstatements and omissions of material fact.  For example, she failed to tell them that she had completely disregarded my medical records and my doctor's explicit request, and she failed to tell them of my total disability and my request for my legal and civil rights under the ADA.

In sum, for reasons that ESARO never told me, the supervisor and hearing officer were hell-bent on forcing me to go through the appeal hearings – and neither total disability, nor ADA laws, nor HRS or HAR laws, nor doctor's request, nor Congressional inquiries, nor flood of letters with all the best reasons in the world

were going to change their malice and hostility toward me and get them to give me the time I was legally entitled to receive from them. There was no law that required them to force me to endanger and damage my health – and they never gave an honest and open explanation of why they acted in ways that permanently and catastrophically destroyed my health and my life. And CRC and Director Lockhart have totally failed to investigate and report ESARO's justification for forcing me to go through the hearings and all the other hell that ESARO has put me through for the last 6½ years.

Coming back to Director Lockhart's initial misstatement: ESARO never told me that the December 14, 2000 hearing had been changed in purpose from my official appeal hearing to a hearing on my request for a continuance until _I_ called ESARO, once again, the day before the hearing – whereupon an office aide informed of the change. To add insult to injury, the ESARO supervisor did not mail me notice of this change until the day of the hearing, for I got her notice of this change the day after the hearing had already been held.

13) Director Lockhart utterly failed her legal responsibility to investigate and determine whether the Appeals Officer(s) had violated federal and state laws by determining that "the CP failed to provide sufficient evidence to support his request for another prolonged continuance…" If a flood of letters, dozens of medical records, a doctor's request, certification of my total disability by state and federal agencies, citing of my legal and civil rights under the ADA, inquiries from my federal and state representatives, and testimony in-person at the December 14, 2000 hearing "failed" to be "sufficient evidence" – I demand Director Lockhart and ESARO to tell me exactly what kind of evidence would be "sufficient" to obtain an open-ended continuance – and exactly why all of my extensive and varied evidence "failed" to be "sufficient evidence". I doubt that their excuses would stand up to a truly just and impartial scrutiny and evaluation by you or the court.

It is extremely relevant at this point to note that just 14 days after the December 14, 2000 hearing, the DLIR's own legal expert on the ADA and other civil rights laws, Mr. Tom Jackson, told the ESARO supervisor in-person that the ADA, etc. legally required the supervisor and hearing officer to grant me just such an open-ended continuance, or as he put it, "for as long as Mr. Barch's medical condition requires." Mr. Jackson told me by phone that the ESARO supervisor became furious and complained about the law. And then she, as always, completely disregarded Mr. Jackson's expert legal advice, and completely disregarded the ADA – and utterly failed her sworn oath to uphold state and federal laws, failed to remain "absolutely impartial" (HAR), and failed to grant me the open-ended continuance my medical condition and the laws entitled me to receive from her.

14) Director Lockhart also failed her legal responsibility to investigate and determine whether the Appeals Officer violated federal and state laws by his conduct at the December 14, 2000 hearing. Among his many signs of malice, prejudice, and discrimination towards me, I will limit my examples to these 3 important events:

A) When the defense attorney for my ex-employer asserted that my "being totally disabled for the purposes of the State Department of Human Services and the U.S. Social Security Administration may not make you totally disabled for the purposes of this unemployment benefits appeal process" – the ESARO hearing officer failed his legal responsibility by saying nothing. In the law, silence is understood to mean agreement. His silent agreement to such discriminatory nonsense further convinced me that he was not an ethical, law-abiding official. Any honest and fair person would have said, "Total disability is total disability – in this appeal process, as in all other government processes." But he did not say what his view was regarding my total disability and my legal and civil rights in the ESARO appeal process. In fact, he never once acknowledged that I *am* totally disabled, medically and legally, nor did he ever give me "reasonable accommodation" for my disability, which the ADA legally required him to do. From start to finish he treated me as if I was completely healthy, and as if I was

falsely claiming to be totally disabled – even after he read hundreds of pages of my medical records and all of the doctors' and government agencies' certification of my total disability. This fact is solid evidence of the Appeal Officer's prejudice, malice, and discrimination against me – because my disability is stress-caused and internal, rather than being external and visible, like someone confined to a wheelchair.

B) The Appeals Officer also violated federal, state, and agency laws and rules by grossly misinterpreting my repeated medical need for continuances of my own appeal hearing. Out of his own negative perception and pre-conception – and without a single piece of objective evidence – the Appeals Officer simply declared, on no other basis except his being in a position of power, his opinion that every time a hearing was scheduled, I requested a postponement for no valid reason. Instead of accepting all of the medical evidence to the contrary, all of the doctors' and government certifications, and all of my letters and in-person testimony – the Appeals Officer replaced reality with the shadow world of his darkest, most distrustful fantasies. This was pure prejudice, malice, and discrimination against me – and no amount of evidence would be "sufficient" to such a close-minded and hostile official.

Director Lockhart had extensive evidence and 25 years of professional experience to know that I have medically needed – and have requested – additional time from CRC, DLIR, and the state court consistently. The commonsense reason that I repeatedly need more time is *I am totally disabled*. Why is the fact that disabled people need more time than healthy people so impossible for DLIR and CRC to accept as true? If DLIR or CRC "suspect" I have ulterior motives for requesting postponements, then they have a legal and moral obligation to support their prejudices with objective evidence – but they <u>never</u> cite any evidence! They just assert their opinions "by fiat," as if they disdain the fact that they are public servants in a democracy and are bound by rules of evidence and the law of due process. But despite the failures of

ESARO's Appeals Officer and Supervisor – and CRC's investigators and Director Lockhart – to cite evidence and follow the law, they are nonetheless legally required to do so, and I am demanding that they be firmly held to it.

C) Because of the above two demoralizing experiences – occurring after 14 long days of ESARO unfairly disregarding every valid medical and legal reason, and every supporting medical and governmental authority, I could think of to present to the Appeals Officer and his Supervisor – I realized that absolutely nothing I could do or say was going to be accepted as true or "sufficient" to this completely unethical and unlawful Appeals Officer.  As a result of this absolutely unfair and hopeless predicament, I temporarily agreed to proceed with my appeal.  I was physically exhausted by the previous two weeks of unfair rejections by ESARO, by the previous year of fighting an inhumane government system for basic survival funds, and by the over-2-hour hearing on December 14, 2000.  I felt forced and manipulated into acquiescing to proceed. But as soon as I tried to comply with the impossible demands and schedule imposed on me by the Appeals Officer, my mental and physical disabilities once again prevented me from being able to function like I was used to before I was totally disabled.  I immediately and repeatedly faxed the Appeals Officer desperate pleas for more time – but he ruthlessly refused every one of my requests in December 2000 and February 2001, while he granted every single request for more time by my ex-employer (which totaled six weeks in all).  This is irrefutable favoritism and "disparate treatment" under the ADA – but Director Lockhart failed to find it discriminatory, or to even discuss it in her FAA.  Why?

15) Director Lockhart also failed to state that the Appeals Officer's scheduling of "several pre-hearing conferences" and his requests for "subpoena requests and witness lists within specific time frames" was extremely over-burdensome and time-pressured, and blatantly showed his failure to give me "reasonable accommodation" for my total disability (which was my legal right under the ADA).

Director Lockhart also failed to state that the Appeals Officer's scheduling required me to work non-stop during the Christmas and New Year holiday season, thus ruining my family visit in California, causing unnecessary conflict between me and my family that would not have occurred otherwise, and resulting in me becoming severely sick for several weeks, during a critical time when I needed to produce volumes of typed pages to keep up with the Appeals Officer's ruthless scheduling. As always, Director Lockhart fails to see or say that the Appeals Officer consistently treated me with demands and time-pressures that even a healthy Pro Se Appellant would find impossible to keep up with – and that the Appeals Officer consistently failed to give my total disability verbal recognition or "reasonable accommodation" (which was the Appeals Officer's legal requirement under the ADA, and under HRS and HAR as well.)

16) Director Lockhart also failed to state that I began faxing letters to the Appeals Officer within two days of the December 14, 2000 hearing, telling him that my total disabilities were making it painful and difficult for me to keep up with his scheduling demands – and pleading for more time from him.

Director Lockhart also failed to state that I made several requests for more time between December 14 and December 28, 2000 – and that the Appeals Officer denied every single one of my requests, and without an explanation, or even an official letter, which he was required to do by agency policy. (He repeatedly violated agency rules and laws). On my 12-28-00 fax to him, he merely scrawled his denial on my fax, and faxed it back to me as is. (See Exhibit "A") On my letter to him dated February 27, 2001, he merely wrote "REQUEST DENIED", dated and signed it – and left it on the ESARO office counter, for anyone to see. He did not fax or mail his ruling to me, or have his aide call to inform me. I would never have even known his ruling had I not come into the office. (See Exhibit "B") All such misconduct by him toward me is evidence not only that he was lazy and unprofessional, and violated agency policy and administrative rules – but that he treated me with disrespect and hostility, and violated many of my legal and civil

rights. Director Lockhart knowingly omitted countless violations of law in her FAA and willfully ignored the cumulative pattern of civil rights violations by DLIR. Why?

Director Lockhart also failed to state that during these same two weeks, when the Appeals Officer denied every single one of my requests for more time, he discriminated against me and committed ADA's prohibited "disparate treatment" by granting a time extension for my ex-employer's attorney – and for a reason that was nowhere near as valid as my medical reasons. The attorney had agreed to a date without first checking my ex-employer's availability. Thus, the Appeals Officer *granted* my opponent's attorney a time extension because of her incompetence and mistaken actions – at the very time that he repeatedly *denied* my requests for time due to total disability and acute illness. Director Lockhart failed to see this blatant "disparate treatment," discrimination, and violation of my legal and civil rights under the ADA. She failed to even discuss it in her FAA.

17) Director Lockhart committed many *outrageous* "knowing misstatements, misrepresentations, and omissions of material facts" in her discussion of the very legally-relevant events of December 28, 2000.

First, the Appeals Officer did <u>not</u> accommodate my request for a continuance – he denied it, and there is written proof of his denial in the ESARO records that Director Lockhart knew about, or had a legal responsibility to know about. (See Exhibit A.) This is <u>malice</u> on her part: knowingly making false or misleading statements, or acting with reckless disregard of whether her statements are false, and wrongfully denying the complainant truth and justice.

Second, Director Lockhart knowingly omitted a crucially important episode in this overall December 28, 2000 incident, that I described to CRC in writing repeatedly. After my suffering nothing but unfair denials from this corrupt Appeals Officer (and his supervisor) from December 2nd to 14th, and again from December 14th through the rest of December 2000, I called many state government agencies for help.

Finally, I was referred to one of the only honest and helpful state officials in a generally corrupt and indifferent state government: the DLIR's own expert on ADA and other civil rights law, Mr. Tom Jackson, a top aide to DLIR Director Leonard Agor. (Although Mr. Jackson had been at DLIR for several years, he was forced out of DLIR in 2002, after he, too, was mistreated by this corrupt department.)

After I explained to Mr. Jackson what the Appeals Officer and ESARO supervisor were doing to me, and I believe, after I faxed him some documentary evidence – he met in person with the ESARO supervisor on or about December 28, 2000. He told the supervisor that she was required by the ADA and other laws to "give Mr. Barch as much time as his medical condition requires" (or words very close to that). Mr. Jackson later told me by phone that the supervisor became very angry (that is, she failed to be "absolutely impartial" as HAR and agency policy legally required her to be) – and she complained that I had already received nine months. Mr. Jackson reportedly told her words to the effect that, "It doesn't matter how much time he has already received. By law, you are required to give him an open-ended continuance until he is medically ready for the hearings."

The supervisor (like the Appeals Officer) has a proven pattern of completely disregarding medical and legal experts' advice – and even violating federal and state laws, and administrative rules and agency policies (as I have documented to CRC extensively, and as is in the ESAR records themselves; however CRC has inexcusably failed to obtain the two memoranda of March-April 2002 and the interrogatories of DLIR top staff that will prove the supervisor violated my civil rights – and that she and DLIR withheld this fact and this evidence from CRC's investigation of her and DLIR!)

In short, the supervisor disregarded Mr. Jackson's expert legal advice, violated the ADA and HRS, etc. – and failed to grant me the open-ended continuance that I had requested repeatedly in early December 2000, that my doctor requested from

her in his letter dated December 6, 2000, and that Mr. Jackson told her she was legally required to grant me on December 28, 2000.

Ironically, on the very same day, the Appeals Officer denied my request for a continuance. (Exhibit "A")  But he was overruled (for the only time) by the supervisor, who granted me 2 mere weeks instead of the open-ended continuance that she was legally required to grant me and that was my legal  and civil right under the ADA.

In sum, Director Lockhart knowingly omitted *many* very material facts, involving Mr. Jackson's and the supervisor, Ms. Joyce Pang's, crucial meeting on December 28, 2000 – and how that meeting led to the supervisor violating ADA and my civil rights to a medically-required open-ended continuance…and how that meeting also led to the Appeals Officer having his denial of December 28, 2000 over-ruled, and being forced (much against his hostility toward me) to grant me a mere 2-week extension.

By Director Lockhart's knowing omission, she gives the very false impression that the Appeals Officer suddenly (and for reasons she also fails to explain) reversed his own denial of December 28, 2000 and on that very same day supposedly granted me a two-week extension.  This is worse than nonsense -- it is <u>deceptive</u> and <u>a cover-up</u>.  Director Lockhart's false account makes the Appeals Officer appear "reasonable" and "accommodating" to me -- when in reality he was malicious and injurious to me.

Director Lockhart's astounding number of misstatements constitutes complete incompetence and corruption when you consider her many errors and omissions altogether and in context:  with my first two installments' critique of just 2½ pages of Director Lockhart's 4½-page FAA, I have described <u>*40*</u> false statements by her. And many of those 40 failures and falsehoods contain multiple sub-listings as well.

18)I will close this installment with a final group of vital omissions by Director Lockhart in her FAA.  In her list of the events that occurred in December 2000 and January 2001, Director Lockhart failed to even mention one of the most serious criminal violations of law by the ESARO supervisor, Ms. Joyce Pang: 15 to 20 separate counts of violating U.S. Code 1001, each of which is a felony with a potential punishment of imprisonment of 5 years, plus monetary fines.  (See Exhibit"C").

Specifically, I charge that Ms. Pang knowingly and intentionally concealed and misrepresented material facts about my total disability, my medical condition, and my ADA-based requests for continuance of my ESARO appeal hearings; my doctor's written request to her on December 6, 2000; and Mr. Jackson's telling her what her legal obligations were under the ADA on December 28, 2000: in Ms. Pang's misleading letters to my U.S. Congressman, Neil Abercrombie, on December 13, 2000; to my U.S. Congresswoman, Patsy Mink, on December 28, 2000; to my U.S. Senator Daniel Inouye's aide, Mr. Robert Dods also on December 28, 2000; and to my U.S. Senator, Daniel Akaka, on January 12, 2001.  (See Exhibit "D").  CRC apparently never investigated my charges, and Director Lockhart failed to discuss this serious crime by Ms. Pang in her FAA.

In addition, Mr. Jackson told me in 2002 that Ms. Pang apparently lied to federal investigators at CRC, in her interrogatory answers or in her written statement to CRC, by falsely claiming that Mr. Jackson never told her on December 28, 2000 that she was required by the ADA to grant me an open-ended continuance for as long as I medically required more time.  First, Ms. Pang has a long record of lying to state and federal officials and has a clear motive to cover-up her crimes.  Mr. Jackson does not have a record of lying to officials, and has no motive to lie about what he told Ms. Pang on December 28, 2000.  Second, I can prove with documentary evidence that Ms. Pang (and Mr. Rack) has a long pattern of lying to officials.  Third, "ignorance of the law is no excuse" – especially for a government official, like, Ms. Pang who has an ethical and legal duty to know ADA and civil rights and state laws that guide her decisions and actions in her official role.

19

Fourth, Ms. Pang has been a government official for 25+ years, so she has no excuse by now for not knowing that ADA and civil rights and state laws required her to grant me an open-ended continuance for as long as I medically required – with or without the legal advice that Ms. Pang denies that Mr. Jackson gave her.  Fifth, in my letter to her around December 8, 2000, I explicitly asked her to seek the legal opinions of DLIR legal experts about my legal and civil rights under the ADA – but Ms. Pang apparently failed to do so.  Once again, despite my repeated written requests, CRC failed to investigate whether Ms. Pang violated U.S. Code 1001 by lying to CRC investigators – by sending interrogatories to both Ms. Pang and Mr. Jackson about what Mr. Jackson told Ms. Pang on or about December 28, 2000. And Director Lockhart failed to consider or discuss Ms. Pang's alleged lying to federal CRC officials in her FAA.  Once again, If Director Lockhart recklessly disregards the fact that her decision may be distorted by being based in part on lies and a cover-up by Ms. Pang (and Mr. Rack, and DLIR's defense team) – then by definition, under the law, Director Lockhart is guilty of malice and has deprived me of truth, justice, and a full and fair investigation and Final Agency Action.

Finally, it appears that DLIR has violated U.S. Code 1001 by failing to send to CRC the two legal memoranda that Ms. Pang and DLIR's Deputy Attorney General, Frances Lum, submitted to DLIR Director Leonard Agor in March or April 2002.  In those competing legal opinions, Ms. Pang and Ms. Lum argued over whether Ms. Pang (and Mr. Rack) had violated my legal rights by denying me a copy of my ESARO records.  In addition, DLIR apparently (and intentionally) failed to notify CRC that DLIR's legal expert on ADA and civil rights laws, Mr. Jackson, had been asked by Ms. Pang in Spring of 2002 whether she (and Mr. Rack) had violated my civil rights by denying my 13 requests (and for an entire year) for me to access and copy tapes and my own ESARO records, so that I could prove perjury by my ex-employer's four main employee-witnesses during my appeal hearings (upon which Mr. rack had based his decision and refused to consider 150 pages of evidence of their perjury, and to which Ms. Pang had refused my requests that she intervene).

Mr. Jackson evaluated the evidence and the law – and told Ms. Pang that she and Mr. Rack <u>had</u> violated my legal and civil rights!

This is a "smoking gun" that helps *prove* my case – but, as always, CRC utterly failed to obtain interrogatory answers, sworn testimony, or any DLIR documentary evidence, despite my repeated written requests that CRC do so.

Also, another strong indication that DLIR violated U.S. Code 1001 intentionally is that neither Ms. Pang nor DLIR top staff ever apparently informed CRC in CRC's Fall 2002 contact with Ms. Pang and DLIR that DLIR's own Mr. Jackson had legally determined that DLIR's Mss. Pang and Mr. Rack had violated my legal and civil rights.  DLIR's failure to inform CRC of this centrally material fact constitutes a knowing and intentional act to conceal legally-relevant information and to cover-up DLIR crimes.  Another strong indication of DLIR's knowing and intentional concealment and cover-up of DLIR'scrimes is that Mr. Jackson told me that DLIR's Deputy attorney General, Frances Lum, explicitly instructed Mr. Jackson to violate DLIR's standard policy which usually required Mr. Jackson to give his legal opinion in writing.  But Ms. Lum apparently abused her legal authority by instructing Mr. Jackson not to put his legal opinion in writing, but only to tell Ms. Pang his legal opinion orally.  Ms. Lum's actions appear to be a knowing and willful attempt by her to tamper with a legal expert, to violate agency policy (and maybe state and federal law), and to conceal material evidence by actively preventing it from being created, as it usually would have been.  Then no evidence existed of Mr. Jackson's legal determination that DLIR staff had, indeed, violated my legal and civil rights – and Ms. Lum and Ms. Pang apparently concealed this crime that was legally-relevant to my CRC complaint by failing to tell CRC investigators about it.

And yet again, CRC's investigators failed to send interrogatories to Mr. Jackson, Ms. Pang, Ms. Lum, or Mr. Agor about this "smoking gun" incident – despite my urgent and repeated written requests.  And once again, Director Lockhart failed to mention or consider it in her FAA, which is almost all errors, omissions, and malice.

*                    *                    *

I must stop here (for now) in order to mail this on time to the court, and to you.  But next week, I plan (my health permitting) to finish my critique of Director Lockhart's completely corrupt Final Agency Action.  I will then type a report of numerous acts of misconduct by CRC investigators on my case and by Director Lockhart herself. As soon as possible, I will also type a list of the many errors, omissions, bias, and malice in Appeals Officer Thomas Rack's decision denying me benefits, and a list of approximately *100* violations of my legal and civil rights by Mr. Rack, Ms. Pang, and DLIR.

Sincerely,

*James A. Barch*

James A. Barch

**EXHIBIT "A"**

# FAX

TO : MS. PANG & MR. RACK

EMPLOYMENT SECURITY APPEALS OFFICE

FAX # (808) 586-8944

FROM : JAMES A. BARCH, CASE #0000327

FAX # (408) 356-5243

DATE : 12-28-00  (AT 3:30 PM YOUR TIME)

SENDING : 2 PAGES

COMMENTS : ① PLEASE GIVE COPIES OF MY FAX

TO BOTH MS. PANG & MR. RACK

② PLEASE ASK BOTH MS. PANG & MR. RACK

TO REPLY PROMPTLY (OR HAVE A CLERK

REPLY PROMPTLY) TO MY 2 REQUESTS

IN THIS FAX.

MAHALO— Jim Barch

12/28/00

PLEASE REFER TO THE RESPONSE OF 12/28/00 AND

THE ORDER SCHEDULING HEARING DATE AND PREHEARING

DEADLINES both dated 12/8/00 & FAXED TO YOU ON THE

SAME DATE. THE DEADLINES REMAIN AS SPECIFIED IN

THE ORDER

DLIR.
APPEALS OFFICE
Dec 28  3 25 PM '00

**EXHIBIT "B"**

26-27-01  01:01 PM   JAMES A. BARCH                 808  742  2352                    P.02

REQUEST DENIED.

2/27/01

James A. Barch
P.O. Box 161042
Honolulu, HI 96816

(808) 732-0609

Case No. 0000327

February 27, 2001
(by fax & U.S. Mail)

Mr. Thomas Rack, Hearing Officer
Employment Security Appeals Referees' Office
830 Punchbowl Street, Room 429
Honolulu, Hawaii 96813

Mr. Rack:

I urgently request that you please grant me an extension of the March 1, 2001 at 5 PM deadline for me to deliver all of my Exhibits to both you and to Ms. Sarah Wang's law office.

I urgently request that you extend the deadline over the weekend to Monday, March 5, by 5PM.

My grounds for this request are that the current deadline of March 1 is a mere two days away — and I have not been able to prepare a single Exhibit yet!!!

Furthermore, Ms. Wang (and even you) bear most of the responsibility for my desperate plight!

Both of you have acted aggressively toward me from December 2000 to now, forcing me to perform complicated tasks on a very stressful schedule just to satisfy your and her demands!

Both of you have totally disregarded my severe Total Disability stress-injuries medical condition — in total disregard of an overwhelming body of medical and governmental documentation, a multitude of my own written and in-person oral complaints, and my own distressed behavior and disabled productivity — which both of you have observed, but turn a blind eye and deaf ear to! (And where are either of your Hearts in this process???)

As I and Dr. Altman explicitly and adamantly warned you of in December 2000, your forcing me to do this stressful process on your (not my) accelerated, very stressful schedule, would harm my already injured and vulnerable mental and physical health. It has and it is right now!

Your unrelenting deadlines in December 2000 made my stress-injuries "flare up" into a severe illness that lasted over one month (From December 26, 2000 to January 2001) and required two full courses of prescribed antibiotics to cure!

1

**EXHIBIT "C"**

U. S. Code 1001 (main)

TITLE 18--CRIMES AND CRIMINAL PROCEDURE

PART I--CRIMES

CHAPTER 47--FRAUD AND FALSE STATEMENTS

Sec. 1001. Statements or entries generally

(a) Except as otherwise provided in this section, whoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully--

(1) falsifies, conceals, or covers up by any trick, scheme, or

device a material fact;

(2) makes any materially false, fictitious, or fraudulent statement or representation; or

(3) makes or uses any false writing or document knowing the same

to contain any materially false, fictitious, or fraudulent statement

or entry;

shall be fined under this title or imprisoned not more than 5 years, or

both.

(b) Subsection (a) does not apply to a party to a judicial proceeding, or that party's counsel, for statements, representations, writings or documents submitted by such party or counsel to a judge or

magistrate in that proceeding.

(c) With respect to any matter within the jurisdiction of the legislative branch, subsection (a) shall apply only to--

(1) administrative matters, including a claim for payment, a matter related to the procurement of property or services, personnel

or employment practices, or support services, or a document required

by law, rule, or regulation to be submitted to the Congress or any

office or officer within the legislative branch; or

(2) any investigation or review, conducted pursuant to the authority of any committee, subcommittee, commission or office of the Congress, consistent with applicable rules of the House or Senate.

(June 25, 1948, ch. 645, 62 Stat. 749; Pub. L. 103-322, title XXXIII, Sec. 330016(1)(L), Sept. 13, 1994, 108 Stat. 2147; Pub. L. 104-292,

U. S. Code 1001 (main)
Sec. 2, Oct. 11, 1996, 110 Stat. 3459.)

Historical and Revision Notes

Based on title 18, U.S.C., 1940 ed., Sec. 80 (Mar. 4, 1909, ch. 321,
Sec. 35, 35 Stat. 1095; Oct. 23, 1918, ch. 194, 40 Stat. 1015; June 18,
1934, ch. 587, 48 Stat. 996; Apr. 4, 1938, ch. 69, 52 Stat. 197).
Section 80 of title 18, U.S.C., 1940 ed., was divided into two parts.
The provision relating to false claims was incorporated in section 287 of this title.
Reference to persons causing or procuring was omitted as unnecessary
in view of definition of ``principal'' in section 2 of this title.
Words ``or any corporation in which the United States of America is
a stockholder'' in said section 80 were omitted as unnecessary in view
of definition of ``agency'' in section 6 of this title.
In addition to minor changes of phraseology, the maximum term of
imprisonment was changed from 10 to 5 years to be consistent with
comparable sections. (See reviser's note under section 287 of this title.)

Amendments

1996--Pub. L. 104-292 reenacted section catchline without change and
amended text generally. Prior to amendment, text read as follows:
``Whoever, in any matter within the jurisdiction of any department or
agency of the United States knowingly and willfully falsifies, conceals
or covers up by any trick, scheme, or device a material fact, or makes
any false, fictitious or fraudulent statements or representations, or
makes or uses any false writing or document knowing the same to contain
any false, fictitious or fraudulent statement or entry, shall be fined
under this title or imprisoned not more than five years, or both.''
1994--Pub. L. 103-322 substituted ``fined under this title'' for
``fined not more than $10,000''.

**EXHIBIT "D"**

*PLEASE NOTE: THESE PAGES 4 THROUGH 8 ARE FROM MY LETTER TO DLIR, AND TO DLIR'S MR. TOM JACKSON, DATED SEPTEMBER 18, 2002. I MAILED A COPY OF THE ENTIRE 21-PAGE LETTER OF DLIR CRIMES TO CRC THAT SAME MONTH*

11) I will briefly support the above charges. First, my own _very-preliminary_ list of Rack's and Pang's most egregious violations against my legal and civil rights already exceeds **50** categories (or types) of violations. And within each of those 50 categories, there exist a _combination of multiple illegal acts_—so the actual number of violations of law, and intentional acts of discrimination, is easily between 100 to 200! **Rack and Pang are out-of-control criminals!** This not just my opinion—this is what any objective evaluation of the facts and evidence will prove.        — *James Barch*

12) Second, I will begin by describing **_many of the most serious_** legal violations by Pang and by Rack that _prove_ their "**intentional bad faith**" and their "**knowing and malicious" violation of the law and my civil rights** as a Disabled American:

### Pang Knowingly Concealing and Misrepresenting Material Facts to my 4 Federal Representatives

1) As early as December 11, 2000, I reacted to Rack's and Pang's illegal refusals to accommodate my total disability by complaining to all of my State and Federal representatives. I gave each of my elected representatives the above medical and governmental proofs of my disability, plus a Chronology of ESARO's extensive Misconduct in just that first week of December 2000)!

2) On December 13, 2000, Pang faxed to my U. S. Congressman, Neil Abercrombie, a copy of her letter to me dated December 12, 2000. Since Pang's letter "knowingly misrepresents and conceals material facts," Pang was knowingly and maliciously **lying to U.S. Congressman Abercrombie**!

   A) Pang's letter dated December 12, 2000 knowingly misrepresented and concealed all of the following very material facts:

      i) That I had informed ESARO, repeatedly between February 27, 2000 and September 13, 2000 that my conscientious, "utmost human efforts" to fulfil ESARO's required preparations for my appeal hearing were being consistently prevented by numerous symptoms of "abuse, trauma, and disability" which caused me "difficulties concentrating and thinking" and "painful emotional reactions" to remembering, and writing about, my abuse-traumas from my ex-bosses.

      ii) That ESARO had never informed me to, or requested me to, submit any medical information. Therefore, because my medical and psychiatric records are personal and private documents, I did not feel the need to give them to ESARO until ESARO started illegally refusing my right to a postponement in early December 2000.

      iii) That Pang's statement, "Similarly, your request to postpone the December 14, 2000 hearing failed to raise the issue of existing severe medical problems that render you unable to participate in an administrative hearing" is a lie/misstatement/misrepresentation! (Please read my letters to ESARO from February 27, 2000 to September 13, 2000, and especially December 4 through 11, 2000.)

      iv) That in at least two letters to ESARO, on September 13, 2000 and December 11, 2000, I had extensively explained why my severe disabilities and severe "basic survival" difficulties had PREVENTED the preceding ten months from being "more than sufficient time to prepare" (as Pang put it so ignorantly and discriminatingly). (I told Pang that for a disabled person, time alone is not a fair basis on which to decide what is "sufficient time" to prepare for one's own appeal!)

      v) That I had already satisfied the legal requirements for a postponement of the 12-14-00 hearing (and of my entire appeal) according to "reasonable cause" of **HAR 12-5-93(e)(2)** and for "reasonable accommodation" under **ADA 1.8 and HRS 368-1.5**. I had met the legal requirements by giving Pang herself Dr. Altman's letter to Pang dated 12-6-00; plus four prior doctor's medical documents to Pang on December 11, 2000; plus 2 governmental disability proofs to Pang on

4

December 11, 2000—and by specifically asking Pang to grant my ADA disability rights on December 11, 2000!

vi) That Pang _purposely omitted_ mentioning my December 11, 2000 request that she get legal advice about **my ADA disability rights**—and whether or not she had gotten ADA legal advice.

vii) That Pang had _knowingly and maliciously violated_ all of the above HAR, ADA, and HRS laws—by failing to immediately grant my request for a postponement of the 12-14-00 hearing (and my entire appeal) based on the many documents and requests I gave Pang on 12-6-00 and 12-11-00.

viii) That Pang had _failed to give me a legally valid explanation_ for her failure to grant my request for a postponement.

ix) That Pang had no legal grounds for failing to grant my requests for a postponement.

x) That Pang had no legal grounds for requiring me to attend the 12-14-00 (despite the above laws, despite all of the disability proofs, and despite all of my requests to Pang and Rack).

xi) That Pang had _failed to properly inform me of my legal rights_ that, pursuant to the above HAR, ADA, and HRS laws, I was _not_ legally required to attend the 12-14-00 hearing.

xii) That Pang had no legal grounds for "suggesting" to me that I _repeat_ all of these facts and requests (unnecessarily!) at the very 12-14-00 hearing that both I and Dr. Altman had just recently told Pang would be _harmful_ to my stress-injuries and medical disabilities (and as it turned out to be!).

xiii) That Pang was knowingly and maliciously requiring me to harm my health, and worsen my disability medical condition, endure stress, exhaustion, pain, and suffering—and for no legally valid reason!

xiv) That Pang's and Rack's egregious misconduct (documented in my Chronology on 12-10-00, and given to Pang and all of my elected representatives on 12-11-00) **had _already_ unjustly and injuriously caused harm to my health**, had worsened my disability medical condition, and had forced me to endure stress, exhaustion, pain, and suffering—and for no legally valid reason!

xv) That the "administrative rules" (HAR) did _not_ prohibit ESARO supervisor Pang from discussing my problems with ESARO's treatment of my case and my rights—and the "administrative rules" did not prohibit either Pang or Rack from responding promptly to my desperate inquiries through their office assistants. Thus, Pang knowingly concealed that she (and Rack) were negligent by ignoring and delaying their replies to my desperate inquires and pleas—as time rapidly ran out on the "arbitrary" deadline "crisis" that Rack had created, and that Pang allowed to harm my health!

**Thus, in Pang's letter to me dated 12-12-00 (and faxed to U.S. Congressman Abercrombie on 12-13-00), Pang "knowingly misstated, misrepresented, or concealed material facts" at least _15_ times!  Pang knowingly and maliciously made a 15-count "false statement" to a Federal official!  This is a _serious_ crime!**

3) On December 28, 2000, Pang sent two identical letters to U.S. Congresswoman Patsy T. Mink and to U.S. Senator Daniel K. Inouye's Staff Assistant, Mr. Robert D. Dods, both of whom had written to DLIR Director Leonard Agor inquiring about my complaints of ESARO misconduct.  Pang illegally lied to my U.S. Congresswoman and to my U.S. Senator's Staff Assistant by "knowingly concealing, misstating, and misrepresenting material facts" about my case and my own conduct.  This is a _"false statement and a crime"_:

A)  Pang's date of October 1999 is <u>wrong</u> (by 3½ months). I filed for unemployment benefits on January 13, 2000.

B)  <u>Pang knowingly concealed</u> the extremely material fact that I had written <u>several</u> letters to ESARO from February 27, 2000 to September 13, 2000 informing ESARO that my conscientious, "utmost efforts" to fulfil ESARO's required preparations for my appeal hearings were being <u>prevented</u> by my "abuse, trauma, emotional and cognitive difficulties, and medical <u>disabilities</u>."

C)  <u>Pang knowingly misrepresented</u> me to appear to my elected representatives as if my repeated requests for postponements (of <u>my own</u> appeal hearing) was <u>not</u> due to the above difficulties and disabilities—but rather, due to some (implied) irresponsibility own my part. <u>Pang herself was irresponsible and unethical</u> to "misinterpret" my disability as irresponsibility–<u>when Pang had no valid evidence or reason</u> to negatively misrepresent my conduct to my elected representatives! Just the opposite: <u>I had responsibly informed</u> Pang and ESARO repeatedly and clearly of my difficulties and disabilities! <u>This is strong evidence of Pang's ignorance and discrimination</u> against my disability! This is also strong evidence of <u>Pang retaliating against me</u> for "going over her head" and for complaining of Pang's ADA violations and discrimination against my disability to government officials with more authority than her! These are <u>crimes</u>.

D)  <u>Pang also knowingly concealed and omitted</u> the material facts about my many calls and letters to ESARO from December 1, 2000 to December 13, 2000 to postpone the hearing ESARO scheduled for December 14, 2000—and how ESARO aides' and secretary's <u>promises</u> of prompt replies by Pang and Rack were <u>repeatedly not fulfilled</u> by Rack and Pang. ESARO created a stressful crisis for me, and then ignored and delayed responding to my desperate inquiries and requests for replies and for a postponement, thus intentionally inflicting emotional distress (and injurious physical stress) upon me—**for no legally valid reason, and against the laws** of ADA, HRS, and HAR! (More <u>crimes</u>.)

E)  <u>Pang also knowingly concealed</u> the material fact of Dr. Altman's letter <u>to Pang herself</u> on December 6, 2000 (a mere 3 weeks before!) confirming my total disability and emphatically requesting Pang to postpone my entire appeal until I was medically recovered.

F)  <u>Pang also knowingly concealed</u> that I gave her documentary proof of my Total Disability from 4 previous doctors, and from the U.S. Social Security Administration and the State Department of Human Services!

G)  <u>Pang also concealed</u> my letter <u>to Pang herself</u> on December 11, 2000 in which I specifically requested that Pang get legal advice about my rights as a Disabled American under the <u>ADA</u>.

H)  <u>Pang also knowingly concealed</u> that <u>she never even replied to tell me</u> whether or not she got the legal advice about my ADA civil rights for a postponement due to my disability. (Pang apparently did not seek legal advice about the ADA—or if she did, she then apparently disregarded the ADA, just as she disregarded all of the laws and proofs regarding my total disability that did not support her preconceived, prejudiced discrimination against my disability, and her unexplained, illegal *insistence* that I be forced to proceed with my own appeal—even if I was medically unready!)

I)  <u>Pang also knowingly concealed</u> that <u>she never replied to me to tell me why she was NOT granting my request for a postponement due to my disability and my ADA civil rights</u>.

J)  <u>Pang also knowingly concealed</u> that she herself was directly informed of my above disability proofs and of my claiming ADA civil rights for a postponement when <u>she deflects attention</u> (and responsibility!) from <u>her</u> delays, decisions, and denials of my legal rights for a postponement (under HAR 12-5-93 (e) (2),

ADA 1.8, and HRS 368-1.5) to <u>Mr. Rack's</u> *opinion* that "there was insufficient evidence in the record to justify another prolonged continuance." (Which is, itself, an outrageous <u>LIE</u>—as the case record emphatically *PROVES*!)

K) <u>Pang also knowingly concealed</u> that she and Rack knowingly and maliciously violated my legal and civil rights as a Disabled American under the above 3 laws!

L) <u>Pang also knowingly concealed</u> that she and Rack had absolutely no valid legal grounds for refusing to grant me a postponement, or for forcing me to proceed with my own appeal.

M) <u>Pang also knowingly concealed</u> and omitted that my post-12-14-00 opposition was <u>not</u> the first request for a postponement of the February 2000 deadlines! Opposing attorney Sarah Wang had notified Rack <u>immediately after</u> the 12-14-00 hearing that the hearing dates <u>she herself had agreed to</u> on 12-14-00 <u>were not good for her clients</u> because <u>Ms. Wang had neglected to confirm the dates of her clients'</u> <u>availability</u> *before* she attended the 12-14-00 hearing! **So:** Rack and Pang <u>repeatedly refused</u> to grant <u>me</u> a postponement—<u>despite very strong reasons</u> of my Total Disability and 3 fundamental <u>LAWS</u>—but Rack **granted** my opposition a postponement for the "<u>flimsy and flaky</u>" reason of Wang's professional incompetence! <u>This is very strong evidence of Rack's (and Pang's)</u> **discrimination** <u>against my</u> <u>disability</u> (and retaliation against me for complaining "over their heads" to my elected representatives)! It is also what the ADA calls "<u>disparate treatment</u>" and "<u>disparate impact.</u>" (This discrimination was <u>the</u> <u>rule, not the exception</u>, in the *6 months* of the appeal process I suffered from ESARO!)

N) Outrageously, <u>Pang knowingly and maliciously misrepresented my</u> **coerced** (and **very temporary**) agreement to try to proceed with Rack's "arbitrary and capricious" and painfully stressful, injurious, and illness-causing appeal schedule. <u>Pang knowingly concealed and omitted</u> that the "new series of letters from Mr. Barch" told ESARO that the *harmful stress* (and even *illness*!) that Dr. Altman and I had *warned* ESARO <u>would</u> happen, <u>was</u> happening now!

O) <u>Pang even offered the deceitful, misleading</u> **"bluff"** that Mr. Dods was welcome to come and listen to my taped 12-14-00 "agreement" as proof of ESARO's proper conduct. If Mr. Dods *had* listened to the tape (as I ask this investigation to do), Mr. Dods would have heard that I <u>only</u> "agreed" to try to proceed with the appeal process <u>after all of my reasons and requests for a postponement were demeaned,</u> <u>dismissed, and denied by Rack</u>! (I temporarily felt "beaten" by Rack's abuse-of-power, and I briefly "gave up" fighting for my legal rights. But then my disability, pain, and illness forced me to request the postponements I medically needed!) Also, <u>when viewed in the context of my voluminous letters and</u> <u>documents</u> for <u>2 weeks before</u> 12-14-00 AND for <u>2 weeks after</u> 12-14-00, <u>Pang's claims about my</u> <u>coerced and very temporary "agreement" at the 12-14-00 hearing will be seen to be VERY deceitful!!!</u> (Pang's lies to Mr. Dods induced Mr. Dods to "turn" against me and tell me to proceed with the appeal process! **Thus, Pang's LIES** *prevented* **Mr. Dods from** *helping me*—**and** *caused* **him to** *distress* **me**!)

P) Pang also knowingly omitted and concealed (from me, as well as from my elected representatives) that <u>I had a legal right</u> [under **HAR 12-5-93(m)(2)**] to take my repeated request for my original hearing officer, Ms. Margaret Ahn (which Pang repeatedly ignored, delayed, and denied) to DLIR Director Leonard Agor! I had demonstrated overwhelmingly in December 2000 that <u>Rack and Pang were</u> <u>prejudiced, biased, discriminatory, retaliatory, and</u> ***NOT*** **"absolutely impartial"** as the above law *requires*. As such, I had many strong reasons to ask Director Agor to <u>disqualify BOTH Rack and Pang</u> from any further involvement in my appeal. **Pang knowingly concealed—and thus** <u>deprived me of—</u> **my legal right** to appeal to DLIR Director Agor. <u>Pang misrepresented the law to appear as if she had</u> <u>the final authority.</u> (See second to last paragraph of Pang's 12-28-00 letter: "...his request will not be

granted. As the administrator for this office, I am charged…and this case has now been assigned to Mr. Rack.")

Q) Most **damaging of all, Pang knowingly and maliciously omitted and concealed** (from me, as well as from my elected representatives) that **she herself had been clearly informed of my legal and civil rights to a postponement of my entire appeal (until I was medically ready) by the DLIR's own expert on Civil Rights and the ADA**—you, Mr. Jackson—*just days* **BEFORE** her 12-28-00 letter to U.S. Congresswoman Mink and U.S. Senator Inouye's Assistant Dods!!! This *outrageous* fact PROVES just how *egregiously* disregarding of the law, and how *aggressively* discriminating (and retaliatory!) toward me, that Joyce Pang's "bad faith" *premeditated, calculating,* intentional illegal acts of deception and discrimination were!!! *WHY?!* What motivated Pang to behave so illegally and hostilely to me? Was she acting out of personal malice, or was she *systematically sabotaging and assaulting my rights and my case* for her (or HBH's) political or legal friends??? I request this CRC investigation to find out!

R) On January 12, 2001 (a mere *two weeks* later), Pang committed her criminal lies a *fourth* time, to U.S. Senator, Daniel K. Akaka, with the same exact letter (and lies) that Pang had mailed to U.S. Senator Daniel K. Inouye's Staff Assistant Mr. Dods and to U.S. Congesswoman Patsy T. Mink on December 28, 2000.

**Thus, in Pang's letter dated 12-28-00 to U.S. Congresswoman Mink and to U.S. Senator Inouye's Assistant Robert Dods (and also sent to U.S. Senator Akaka on 1-12-01), Pang "knowingly misstated, misrepresented, or concealed material facts" at least _18_ times! These are "false statements" to Federal officials, and are _serious_ crimes**!!!

### Rack Knowingly Disregarding My Total Disability and Discriminating Against Me versus My Opponents

4) Rack discriminated against me, my disability, and my case by *denying* literally **every single one** of my **requests for postponements** (due to my *disabilities*) (and without ever giving me a reason!). In discriminatory contrast, Rack *granted* **every single request** for a postponement by my opposition! Rack's grants totaled *3 months* of postponements to my opposition (when Rack wouldn't even give me *5 days*!) Rack even granted my opposition *6 weeks right in the very middle* of my appeal! He never asked them for *proof*, and he never asked me for my opinion, or for how these postponements would adversely affect me, my disability, and my case!

5) On February 27, 2001, I faxed and mailed to Rack my letter desperately requesting a mere *5 day* extension because the stress, exhaustion, and total debilitation that Rack himself had inflicted on me during the prior two months of non-stop rush-work had made me completely unable to gather my extensive exhibits for the 3-1-01 deadline. Rack failed to reply to me promptly or properly—and merely scrawled "request denied" on a photocopy of the first page of my letter. (Please read my entire 2-page letter to Rack of 2-27-01.) What makes Rack's act of discrimination and hostility so unbelievably cruel and inhuman is that Rack had *that very week* been reviewing *80 pages* of my medical records from several doctors and the Social Security Administration. Thus, *Rack knew* in painful, vivid detail just how deep and wide my disabilities are! Legally and ethically (and humanely) Rack had a DUTY to postpone my *entire* appeal for medical disability reasons (as my doctor and I had been desperately requesting for months)!!! But Rack cruelly disregarded 80 pages of severe disability proofs—and refused to grant me even 5 measly days!

6) Worse still, although *I* met the 3-1-01 exhibit exchange (at terrible damage to my health—and which also totally debilitated me so that I could not prepare at all for my hearings just 2 weeks later), the opposing attorney *FAILED* to give me her exhibits by the 3-1-01 deadline that Rack held me to! Then, Rack allowed the opposing

8

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| JAMES A. BARCH, | ) | CIVIL NO. 04-00712 SOM-BMK |
|       Plaintiff, | ) | |
|       vs. | ) | CERTIFICATE OF SERVICE |
| STATE OF HAWAII DEPARTMENT OF LABOR | ) | |
| & INDUSTRIAL RELATIONS; ET AL., | ) | |
|       Defendants. | ) | |

CERTIFICATE OF SERVICE

The undersigned hereby certifies that on June 2, 2006, a copy of the foregoing document was served on the following at their last known address via U. S. Certified Mail, postage prepaid, as follows:

> JOHN M. CREGOR, JR.
>
> CARON M. INAGAKI
>
> Deputy Attorneys General
>
> Department of the Attorney
>
> General, State of Hawaii
>
> 425 Queen Street
>
> Honolulu, Hawaii 96813
>
>
> Defendants' Attorneys

DATED: Los Gatos, California, June 2, 2006.

*James a. Barch*

JAMES A. BARCH

Plaintiff Pro Se