ORIGINAL

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

OCT 0 5 2006

at ____ o'clock and ____ min ____ M
SUE BEITIA, CLERK

JAMES A. BARCH
Plaintiff Pro Se
16101 Escobar Avenue
Los Gatos, CA 95032
(408) 978-5727

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| JAMES A. BARCH, | ) | CIVIL NO. 04-00712 SOM-BMK |
|     Plaintiff, | ) | (Other Civil Action) |
| | ) | |
| vs. | ) | PLAINTIFF'S SUPPLEMENTAL |
| | ) | OPPOSITION TO DEFENDANT'S |
| STATE OF HAWAII DEPARTMENT OF LABOR | ) | MOTION TO DISMISS COMPLAINT; |
| & INDUSTRIAL RELATIONS, | ) | |
|     Defendant. | ) | CERTIFICATE OF SERVICE |

Hearing:

Date:    October 23, 2006
Time:    3:00 P.M. (Hawaii Time)
Judge:    Hon. Susan Oki Mollway

1

<u>**PLAINTIFF'S SUPPLEMENTAL OPPOSITION TO**</u>

<u>**DEFENDANT'S MOTION TO DISMISS COMPLAINT**</u>

I.   **INTRODUCTION**

Plaintiff Pro Se, James A. Barch, (hereinafter "Plaintiff") hereby submits this Supplemental Opposition to the Motion to Dismiss filed by Defendant State of Hawaii Department of Labor and Industrial Relations (hereinafter "Defendant" or "DLIR") in the above-referenced matter.

Plaintiff asks this Honorable Court to incorporate by reference Plaintiff's previously filed Opposition with this Supplemental Opposition.

Defendant's <u>Supplement To Its Motion To Dismiss Complaint</u>, filed on September 20, 2006, states that "The Amended Complaint adds nothing materially new and is subject to the same infirmities and defences as the original Complaint." Plaintiff respectfully disagrees.

Plaintiff's original complaint numbered only 5 pages, whereas Plaintiff's Amended Complaint numbers 29 pages: thus, many materially new facts and allegations have been added.

Plaintiff will briefly summarize the additional reasons that Defendant's Motion to Dismiss should be denied. The reasons will be grouped according to Defendant's filed defenses.

II.   **LEGAL ARGUMENTS**

A. **The Present Federal Action Is Not Barred by *Res Judicata* because the Claims and Issues Involved Have Not Been Adjudicated by a Prior Judicial Proceeding or Trier of Fact**

Plaintiff's Amended Complaint lists numerous clear violations of law by the DLIR, many -- but not all -- of which occurred during DLIR's own appeal process. Obviously, the DLIR's tortious officials did not adjudicated their own torts, either during or after their commission, and thus does not qualify as *res judicata*.

Similarly, many -- but not all -- of DLIR's torts were supposed to have been investigated by the U.S. Department of Labor's Civil Rights Center ("CRC"). However, Plaintiff's lengthy, detailed documents, filed with this Court, prove without a doubt that the CRC Final Agency Action is not final, is under appeal, and is comprised almost entirely of errors, omissions, malice, bias, and fundamental failures to obtain vital evidence that Plaintiff told CRC existed at DLIR. Most important of all, the CRC administrative process does not qualify as *res judicata* because it is not a judicial review, and by CRC's own admission in writing to the Plaintiff, does not in any way prevent Plaintiff from suing DLIR "at any time."

Also similarly, many -- but not all -- of DLIR's torts were supposed to have been judicially reviewed by the State of Hawaii's First Circuit Court in September 2003 during Plaintiff's appeal for unemployment benefits that DLIR wrongfully denied. However, a close examination of the transcript of that court hearing shows that all of Plaintiff's facts and evidence contained in Plaintiff's Motions to the Court were not considered as being part of the record by the state judge, and thus were not even

3

considered in the court's judicial review or the court's decision. Even the Plaintiff's oral presentation of facts and evidence of DLIR torts did not appear to be considered by the court, as the court did not respond to, or pursue in any way, Plaintiff's facts and evidence, but quickly dismissed Plaintiff's appeal after a few brief comments. Most importantly, the state court hearing was strictly limited to the Plaintiff's legal right to receive unemployment benefits. It never meant to consider -- and never did consider -- whether DLIR violated Plaintiff's legal and civil rights, or caused Plaintiff catastrophic health damages and life losses -- which are the main allegations of the current federal lawsuit.

Therefore, neither the DLIR appeal hearing, nor the CRC investigation, nor the state court appeal for unemployment benefits qualifies as *res judicata*, because none of those previous actions constituted a judicial review of the same allegations of fact and of the same request for compensation for damages as the current federal lawsuit.

Very importantly, Plaintiff's Amended Complaint adds many DLIR torts that occurred after the above three events. Therefore, at the very least, the Plaintiff's Amended Complaint contains several allegations against DLIR wherein *res judicata* would be literally impossible, and thus at least part of this lawsuit should go foward.

Finally, Defendant's argument is self-contradictory. In Defendant's original Motion to Dismiss, Defendant wrongly asserted that Plaintiff did not made a "direct or other appeal...from the agency's final action other than the filing of the lawsuit which *does not constitute exhaustion of remedies."* In other words, Defendant argues that Plaintiff should have exhausted all other remedies before coming to federal court. But when Plaintiff did just that, Defendant argues *res judicata* (and

statute of limitations) defenses. A state government should conduct itself in ways that deserve the people's trust and respect. A state government must not be allowed to defend its own tortious and dishonest misconduct by further employing "Catch-22" arguments that leave the Plaintiff no way he should have acted.

B. **The Present Federal Action Is Not Barred by the Statute of Limitations because the Complaint Was Filed within the Four Year Statute that the Supreme Court Has Held Applies to Civil Rights Claims -- and some of the alleged torts also occurred within a Two-Year Statute of Limitations.**

The Plaintiff's Amended Complaint contains additional allegations of torts by DLIR that occurred within even a two-year statute of limitations -- including the DLIR's current wrongful refusing to release (or even to admit the existence of) numerous documents that Plaintiff requested in July 2006 under the Freedom of Information Act. Thus, DLIR is continuing its <u>pattern</u> of violating federal laws, violation Plaintiff's legal rights, and withholding essential evidence.

In addition, Plaintiff's Amended Complaint clearly demonstrates that Plaintiff did not have "actionable" or "recoverable" damages to justify the current lawsuit until December 2003. (And that Defendant caused Plaintiff a medical crisis so severe and long-lasting that Plaintiff was overwhelmed with doctor visits for an entire year -- and thus any statute of limitations should be tolled or extended, so as not to reward the Defendant for making Plaintiff so ill that he was unable to file a lawsuit for a year.)

Plaintiff finally was able to file the current lawsuit in December 2004 – which is clearly within even a two-year statute of limitations, from the first date that Plaintiff became aware of having actionable and recoverable damages in December 2003.

Finally, Plaintiff argues that any formula for determining the statute of limitations (whether 4 or 2 years, and whether from the date of a tort or from the date of actionable and recoverable damages caused by the torts) must be applied independently to each and every tort and damage. In other words, the Defendant should not be excused of legal responsibility for an entire series of torts and damages -- as a unified group -- just because the earliest torts occurred earlier than the statute of limitations. While some of DLIR's torts alleged in this current lawsuit may be beyond the statute of limitations, some of DLIR's other alleged torts clearly fall within a two or four year statute of limitations. On that basis alone, the current lawsuit should go forward.

Finally, Plaintiff argues that any alleged DLIR torts that are considered no longer "actionable" or "recoverable" due to statute of limitations, still be considered "admissible" as evidence, so that this Court (or a jury) is able to see the entire truth and the "big picture" – and thus gain a complete understanding that would otherwise be prevented if only a fraction of DLIR's alleged torts are admissible as evidence.

C. **The Present Federal Action Is Not Barred by the Eleventh Amendment because the Complaint Alleges Violations of Federal Civil Rights over which Federal Courts Have Jurisdiction for State Violations**

6

The Plaintiff's Amended Complaint contains additional allegations of torts by DLIR that include violations of federal laws, thus giving jurisdiction to this federal court. For example, DLIR's Ms. Pang, Mr. Rack, and even former DLIR Director Agor, all knowingly omitted material facts from federal investigators at CRC. Ms. Pang lied in 18 ways to 4 U.S. Congresspersons. And many DLIR officials systematically violated Plaintiff's civil rights under the ADA and other federal civil rights laws. The inclusion of numerous violations of federal laws makes this a case over which this U.S. Court should have jurisdiction.

In addition, the ADA specifically gives U.S. Courts jurisdiction in cases where a State has a history or pattern of violating the legal and civil rights of certain classes of its state citizens. This is true in the current lawsuit. The State of Hawaii is widely known to have a history and pattern of violating the legal and civil rights of its most disadvantaged and vulnerable citizens: special education schoolchildren, the mentally ill, the physically and mentally disabled, claimants for unemployment or workers compensation benefits, the poor…and most tragically, Native Hawaiians.

This Honorable Court no doubt knows the shameful history of the State of Hawaii's neglect and abuse of its most disadvantaged citizens very well. But please allow the Plaintiff to briefly cite a few examples to support the above allegation. This U.S. Court itself had to force the State of Hawaii to provide adequate education to the state's special education schoolchildren – which the State of Hawaii knowingly neglected for many decades. This U.S. Court had to repeatedly reprimand the State of Hawaii for failing to abide by the Court's orders and the court's timeline for the State's compliance with the Felix v. Waihee Decree. In the 1990's, the State of

Hawaii lost a lawsuit alleging the State had systematically underpaid and denied claims for unemployment and/or workers compensation benefits. Between 2000 and 2002, Honolulu spent millions of dollars on questionable "beautifying" of Waikiki and Kapiolani Park -- while intentionally ignoring a U.S. Court order to provide wheel chair ramps throughout the city's downtown area. Around 2002, the State Department of Health was forced to keep open a hospital for the mentally ill -- and not discharge these most vulnerable patients by the hundreds -- after intense public outcry. And even after 200 years, Native Hawaiians are still waiting for the State of Hawaii to turn over Homestead Lands for homeless Hawaiians to live on.

The point is that the Plaintiff's current lawsuit qualifies as being part of a history and pattern by the State of Hawaii government to systematically violate the legal and civil rights of its most disadvantaged citizens – in the Plaintiff's case, physically and mentally impaired or disabled claimants for unemployment benefits.

Therefore, the State's 11th Amendment defense must fail, because this U.S. Court has jurisdiction in these circumstances. Furthermore, the Plaintiff argues that this Honorable Court has a moral and ethical -- as well as legal -- right and duty to intervene where the State of Hawaii has a history and pattern of systematic violation of both federal and state laws. In the Plaintiff's case, Plaintiff's legal and civil rights were repeatedly and consistently violated -- causing Plaintiff catastrophic health damages and life losses -- because almost every single one of the dozens of State of Hawaii officials and agencies that the Plaintiff turned to to uphold U.S. and State laws failed to do so. In such a case, the U.S. Court <u>must</u> intervene because the State of Hawaii has proved absolutely unwilling and unable to uphold U.S. and State laws.

8

### III.  CONCLUSION

For the above-stated reasons, this Honorable Court should dismiss Defendant's Motion to Dismiss with prejudice and allow Plaintiff's Complaint to stand and proceed. Alternatively, if this Court should for some reason decide to sustain Defendant's Motion in whole or in part, then the Court should dismiss Plaintiff's Complaint without prejudice and with leave to amend.

Dated: October 4, 2006

*James A. Barch*

Plaintiff Pro Se James A. Barch

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| JAMES A. BARCH, ) | CIVIL NO. 04-00712 SOM-BMK |
|     Plaintiff, ) | |
| vs. ) | CERTIFICATE OF SERVICE |
| ) | |
| STATE OF HAWAII DEPARTMENT OF LABOR ) | |
| & INDUSTRIAL RELATIONS; ET AL., ) | |
|     Defendants. ) | |

CERTIFICATE OF SERVICE

The undersigned hereby certifies that on October 4, 2006, a copy of the foregoing document was served on the following at their last known address via United States First Class Mail, postage prepaid, as follows:

> MARK J. BENNETT
>
> Attorney General of Hawaii
>
> CARON M. INAGAKI
>
> JOHN M. CREGOR, JR.
>
> Deputy Attorneys General
>
> Department of the Attorney
>
> General, State of Hawaii
>
> 425 Queen Street
>
> Honolulu, Hawaii 96813
>
> Defendant's Attorneys

DATED: Los Gatos, California, October 4, 2006.

*James A. Barch*

JAMES A. BARCH

Plaintiff Pro Se