IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| JAMES A. BARCH, | ) | Civ. No. 04-00712 SOM/BMK |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | AMENDED ORDER GRANTING |
| | ) | DEFENDANT'S MOTION TO DISMISS |
| STATE OF HAWAII DEPARTMENT OF | ) | |
| LABOR & INDUSTRIAL RELATIONS; | ) | |
| JOHN DOES 1-20; JANE DOES | ) | |
| 1-20; DOE GOVERNMENT AGENCIES | ) | |
| 1-20; DOE CORPORATIONS 1-20; | ) | |
| DOE PARTNERSHIPS 1-20; JOHN | ) | |
| DOES 1-20; JANE DOES 1-20, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

AMENDED ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

I.      INTRODUCTION.

On August 29, 2006, Plaintiff James A. Barch ("Barch"),

appearing pro se, filed the Amended Complaint, bringing suit

against Defendant State of Hawaii Department of Labor and

Industrial Relations ("the Department").[1]  Although the Amended

Complaint does not clearly state Barch's claims, the court reads

it liberally to find claims asserted under:  (1) 18 U.S.C.

§ 1001; (2) 42 U.S.C. § 1983; (3) the Freedom of Information Act

("FOIA"), 5 U.S.C. § 552 et seq.; and (4) various state laws,

including sections 383-91, 383-30(5), 710-1060, 710-1061,

710-1062, and 710-1063, as well as chapters 92 and 92F, of the

Hawaii Revised Statutes, sections 12-5-47 and 12-5-67 of the

_____

[1] The Amended Complaint also names "John Does 1-20;
Jane Does 1-20; Doe Government Agencies 1-20; [and] Doe
Corporations 1-20" as Defendants.

Hawaii Administrative Rules, and unidentified "DLIR policies."
Barch's opposition memoranda[2] also suggest that he may intend to
assert claims under:  (1) Title II of the American with
Disabilities Act ("the ADA"), 42 U.S.C. § 12101, et seq.; and (2)
42 U.S.C. § 1981.  Barch seeks monetary damages in the amount of
$5,000,000, attorney's fees, and costs.

        Before this court is the Department's motion to dismiss
the Amended Complaint.  The Department argues that the Amended
Complaint should be dismissed because:  (1) the Department is
immune from suit under the Eleventh Amendment; (2) the claims are
barred by the applicable statute of limitations; and (3) the
claims are barred by the doctrine of res judicata.

        The court dismisses Barch's claims under 18 U.S.C.
§ 1001, a criminal statute that creates no private right of
action, and 42 U.S.C. § 1983, as the Department is not a "person"
within the meaning of that statute.  The court also dismisses any
claim under 42 U.S.C. § 1981 because the record contains no
allegation of racial discrimination.  The Department has
sovereign immunity from Barch's state law claims, but not from
his Title II claims.  Nevertheless, the court dismisses Barch's

---

        [2] The Department filed a motion to dismiss Barch's
original complaint ("Complaint"), and Barch filed an opposition
memorandum in response.  After briefing was completed, Barch was
allowed to amend the Complaint.  Thereafter, the Department filed
a supplement to its motion, and Barch filed a supplemental
opposition memorandum.  In his supplemental opposition
memorandum, Barch "incorporate[s] by reference [his] previously
filed Opposition."  Supp. Opp. at 2.  The court therefore relies
on both of Barch's memoranda in opposition.

Title II claims on other grounds.  Barch's FOIA claim is also
dismissed for failure to exhaust administrative remedies.  The
court therefore grants the Department's motion to dismiss.

II.      LEGAL STANDARD.

        The Department challenges this court's subject matter
jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil
Procedure.  "A party invoking the federal court's jurisdiction
has the burden of proving the actual existence of subject matter
jurisdiction."  See Thompson v. McCombe, 99 F.3d 352, 353 (9th
Cir. 1996).  On a Rule 12(b)(1) motion to dismiss for lack of
subject matter jurisdiction, the court is not "restricted to the
face of the pleadings, but may review any evidence, such as
affidavits and testimony, to resolve factual disputes concerning
the existence of jurisdiction."  McCarthy v. United States, 850
F.2d 558, 560 (9th Cir. 1988).

        The Department brings part of its motion pursuant to
Rule 12(b)(6) of the Federal Rules of Civil Procedure.  A motion
to dismiss under Rule 12(b)(6) for failure to state a claim is
proper only if "it appears beyond doubt that the plaintiff can
prove no set of facts in support of his claim which would entitle
him to relief."  Chandler v. McMinnville Sch. Dist., 978 F.2d
524, 527 (9th Cir. 1992).  The court must accept as true all
allegations of material fact in the complaint and must construe
these facts in the light most favorable to the plaintiff.  See

<u>Imagineering, Inc. v. Kiewit Pac. Co.</u>, 976 F.2d 1303, 1306 (9th

Cir. 1992).

III.      <u>BACKGROUND FACTS.</u>

        Barch was a therapist at Hawaii Behavioral Health

("Behavioral Health") until he quit his job on October 14, 1999.

Complaint ¶ 4(h); Ex. A (attached to Motion) at 2.  On January

13, 2000, Barch filed a claim for unemployment insurance benefits

with the Department, stating that he quit his job because his

supervisor and another co-worker were abusive to him and made him

physically sick.  Ex. D (attached to Opp.) at 25-26; Ex. A

(attached to Motion) at 3.  Behavioral Health disputed Barch's

claim and stated that Barch voluntarily quit his job because of

his poor work performance.  Ex. A (attached to Motion) at 3.  On

February 3, 2000, the Department disqualified Barch from

receiving unemployment benefits because the initial facts showed

that he left work voluntarily and without good cause.  Ex. A

(attached to Motion) at 3.

        On February 10, 2000, Barch filed an appeal with the

Department to reconsider its decision.  Ex. A (attached to

Motion) at 3.  Barch requested several continuances of the appeal

hearing, which were granted.  Ex. A (attached to Motion) at 4.

During December 2000, Barch says that Joyce Pang ("Pang"),

supervisor of the Department's Employment Security Appeals

Referees Office ("ESARO"), and Thomas Rack ("Rack"), the ESARO

hearing officer, disregarded a letter from his doctor.  Am.

Complaint ¶¶ 1-2.  Barch also alleges that Pang disregarded legal advice from Tom Jackson, who Barch says is the Department's "legal expert on civil and legal rights."  Am. Complaint ¶¶ 1, 4. Further, Barch says that, between December 2000 and January 2001, Pang "'knowingly misstated, misrepresented, and omitted material facts' at least 18 times to [his] four U.S. Congresspersons and Senators."  Am. Complaint ¶ 3.

Barch alleges that, between February 2001 and July 2001, Pang and Rack disregarded hundreds of pages of Barch's medical records and other "extensive evidence," "talk[ed] with the employer behind [his] back," and "loudly and angrily yell[ed] at [him]."  Am. Complaint ¶¶ 7-9, 12.  Barch says that Pang and Rack also denied him access to his records to prepare for the hearing.  Am. Complaint ¶¶ 5, 10.  After complaining about Rack to Pang, Barch says that Pang "fail[ed] to investigate [his] written complaint."  Am. Complaint ¶ 11.

On July 25, 2001, the Department issued its decision denying Barch's appeal.  Ex. A (attached to Motion) at 5; Am. Complaint ¶ 13.  Barch says the decision "falsely conclude[d] that [he] did not have 'good cause' to quit his job."  Am. Complaint ¶ 13.  Barch alleges that, after the Department issued its decision, Pang and Rack continued to deny Barch's written requests for his ESARO records.  Am. Complaint ¶¶ 14-15.

Barch appealed the Department's final decision to the First Circuit Court of the State of Hawaii.  Ex. A (attached to

Motion) at 5.  Barch says that, during the circuit court
proceedings, Pang and Rack withheld evidence from the court and
continued to deny Barch access to his ESARO records.  Am.
Complaint ¶¶ 16, 18-19, 21.  The circuit court denied Barch's
appeal on October 21, 2003, and entered judgment on October 29,
2003.  Ex. A (attached to Motion) at 5.

        Barch also filed a discrimination complaint against the
Department with the Civil Rights Center ("CRC") of the United
States Department of Labor.  Ex. A at 1-2.  Barch alleges that
Pang and Rack "knowingly made misstatements, misrepresentations,
and omissions of material facts" to federal investigators at the
CRC.  Am. Complaint ¶¶ 20, 22.  In its Final Agency Action
("FAA") dated August 11, 2005, the CRC concluded that "the
evidence is insufficient to support [Barch's] allegation that the
[Department] discriminated against him because of his disability
or in retaliation."  Ex. A (attached to Motion) at 6.  Barch says
he "has appealed the FAA, and has communicated with the CRC
steadily on several occasions after receiving the FAA in August
2005."  Opp. at 5.

        On July 13, 2006, Barch requested documents from the
Department under FOIA.  Am. Complaint ¶ 23.  On August 17, 2006,
the Department responded to Barch's request, stating that "we do
not have and do not know whether some of the documents you
requested ever existed."  Am. Complaint ¶ 23.

        On December 6, 2004, Barch commenced the present
action.

IV.     <u>ANALYSIS.</u>

     A.   The Court Dismisses Barch's Claims Under <u>18 U.S.C. § 1001.</u>

     Barch alleges that the Department violated 18 U.S.C. § 1001 when its employees "'knowingly misstated, misrepresented, and omitted material facts' at least 18 times to [his] four U.S. Congresspersons and Senators." Am. Complaint ¶ 3. Barch also alleges that the Department's employees violated § 1001 by "lying to federal investigators." Am. Complaint ¶¶ 20, 22. The court dismisses Barch's claims under 18 U.S.C. § 1001.

     Section 1001 is a criminal statute that provides:

> (a) Except as otherwise provided in this section, whoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully--
>
> > (1) falsifies, conceals, or covers up by any trick, scheme, or device a material fact;
> >
> > (2) makes any materially false, fictitious, or fraudulent statement or representation; or
> >
> > (3) makes or uses any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry;
>
> shall be fined under this title, imprisoned not more than 5 years or . . . both.

There is no private right of action under this statute. <u>See</u>, <u>e.g.</u>, <u>Hall v. Richardson</u>, No. CIV-95-1907-PHX-ROS, 1997 WL 242765, at *3 (D. Ariz. Feb. 21, 1997) ("Title 18 U.S.C. § 1001 is a criminal statute for which no private right of action

exists." (internal footnote omitted)); <u>Short v. Richardson</u>, No. CS-95-0317-WFN, 1995 WL 810023, at *5 (E.D. Wash. Nov. 21, 1995) (noting that § 1001 "does not provide jurisdiction for this court over the defendants in their individual capacities as the criminal statute does not imply a private right of action"); <u>Tawpash v. Dep't of Army, Fort Ord, Cal.</u>, No. C 93-1506 BAC, 1993 WL 411702, at *1 (N.D. Cal. Oct. 6, 1993) (noting that no private right of action exists under § 1001).  Accordingly, the court dismisses any claim under 18 U.S.C. § 1001.

      B.   <u>The Court Dismisses Barch's § 1983 Claim.</u>

      The Department argues that Barch's claim under § 1983 must be dismissed because state agencies are not "persons" within the meaning of the statute, and the Department is therefore not subject to suit for violation of that section.  Motion at 5-6. The court agrees.

      Section 1983 provides, in relevant part:

> [E]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party in an action at law, suit in equity or other proper proceeding to redress.

42 U.S.C. § 1983.  According to the Supreme Court, "neither a State nor its officials acting in their official capacities are 'persons' under § 1983."  <u>Will v. Mich. Dep't of State Police</u>, 491 U.S. 58, 64, 71 (1989); <u>see also</u> <u>Wolfe v. Strankman</u>, 392 F.3d

358, 364 (9th Cir. 2004) ("A state and its officials sued in their official capacity are not considered 'persons' within the meaning of § 1983."). "Similarly, state agencies are also protected from suit under § 1983." Wolfe, 392 F.3d at 364 (citing Ceballos v. Garcetti, 361 F.3d 1168, 1183 n.11 (9th Cir. 2004)). Because the Department is a state agency, it is not subject to § 1983. See id. The court therefore dismisses Barch's § 1983 claim.

     C.   Barch Has No § 1981 Claim.

Although not apparent from the Amended Complaint itself, Barch's original opposition memorandum suggests that he asserts a claim 42 U.S.C. § 1981. Opp. at 6. Section 1981 provides, "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts." "However, § 1981 redresses only discrimination based on race." Lowe v. City of Monrovia, 775 F.2d 998, 1010 (9th Cir. 1985) (citing Shah v. Mount Zion Hosp. & Med. Ctr., 642 F.2d 268, 272 n.4 (9th Cir. 1981)). Because there is no allegation of racial discrimination in the Amended Complaint, the court does not recognize any § 1981 claim in this case.

     D.  The Department Is Immune From Barch's State Law Claims.

The Department argues that it is immune from Barch's state law claims under the Eleventh Amendment. Motion at 5. It contends that the Eleventh Amendment prohibits federal courts

from hearing suits brought against nonconsenting states and state agencies.  Motion at 5.  In response, Barch asserts that the Department waived its sovereign immunity by filing the present motion and that the Ex Parte Young doctrine applies in this case. Opp. at 7-9; Supp. Opp. at 7-8.  The court concludes that the Department is immune from the state law claims.

The Eleventh Amendment to the United States Constitution provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

Pursuant to the Eleventh Amendment, states, state agencies, and state officials cannot be sued in federal court by their own citizens or citizens of another state for retrospective relief. Papasan v. Allain, 478 U.S. 265, 275 (1986); In re Pegasus Gold Corp., 394 F.3d 1189, 1195 (9th Cir. 2005) ("agencies of the state are immune from private damage actions or suits for injunctive relief brought in federal court"); see also Ulaleo v. Paty, 902 F.2d 1395, 1398 (9th Cir. 1990) ("The eleventh amendment bars citizen suits against states, institutional arms of the state, and state officials in their official capacity when the relief sought is retrospective in nature, i.e., damages." (emphasis in original)).  Unless a state unequivocally waives its sovereign immunity or Congress properly exercises its power to override that immunity, the state and its agencies are immune

10

from suit under the Eleventh Amendment.  See Bd. of Trs. of the
Univ. of Alabama v. Garrett, 531 U.S. 356, 363 (2001); In re
Pegasus Gold Corp., 394 F.3d at 1195.  The Department falls
within the protection of the Eleventh Amendment, as it is a state
agency.  Cf. Office of Hawaiian Affairs, 951 F. Supp. at 1492
(concluding that the State of Hawaii Department of Education is a
state agency entitled to Eleventh Amendment immunity).

          With respect to claims based on state law, the Eleventh
Amendment completely immunizes states, state agencies, and state
officials from state law claims brought in federal court.
Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 106, 117
(1984) (concluding that "a federal suit against state officials
on the basis of state law contravenes the Eleventh Amendment
when--as here--the relief sought and ordered has an impact
directly on the State itself"); Cholla Ready Mix, Inc. v. Civish,
382 F.3d 969, 973-74 (9th Cir. 2004) ("[A]ll of [plaintiff's]
state law claims are barred by the Eleventh Amendment, which
precludes the adjudication of pendent state law claims against
nonconsenting state defendants in federal courts."); see also
Office of Hawaiian Affairs v. Dep't of Educ., 951 F. Supp. 1484,
1492 (D. Haw. 1996) ("the Eleventh Amendment bars federal courts
from exercising jurisdiction over state law claims against a
state." (citing Pennhurst, 465 U.S. at 118-22)).

          The State of Hawaii has waived its sovereign immunity
to certain types of suits.  In section 661-1 of the Hawaii
Revised Statutes, the State consents to being sued for monetary

relief for violations of state statutes, state regulations, and contracts entered into with the state. Haw. Rev. Stat. § 661-1; Office of Hawaiian Affairs, 951 F. Supp. at 1491 (citing Jacober v. Sunn, 6 Haw. App. 160, 170, 715 P.2d 813, 821 (Haw. Ct. App. 1986)). "However this statute does not extend consent to suits in federal court." Office of Hawaiian Affairs, 951 F. Supp. at 1491. Similarly, in chapter 662 of the Hawaii Revised Statutes, the State consents to being sued in tort actions. Id. "However this provision also does not operate as a waiver . . . to suit in federal court." Id.; see also Doe ex rel. Doe v. State of Haw. Dep't of Educ., 351 F. Supp. 2d 998, 1018 (D. Haw. 2004) ("Although the State of Hawaii generally waives . . . sovereign immunity as to torts of its employees in the Hawaii State Tort Liability Act, H.R.S. ch. 662, this waiver only applies to claims brought in state courts and does not constitute a waiver of the State's Eleventh Amendment immunity."); Pahk v. Hawaii, 109 F. Supp. 2d 1262, 1268 (D. Haw. 2000) ("Although the State of Hawaii consents to being sued in tort actions[,] . . . that consent applies only to cases brought in the state courts of Hawaii, not to cases brought in federal courts."); cf. Fordyce v. City of Seattle, 55 F.3d 436, 441 (9th Cir. 1995) ("Although [a state] may waive the protection of the Eleventh Amendment's jurisdictional bar by passing a statute consenting to be sued, a statute consenting to suit in state court does not constitute consent to suit in federal court.").

In the Amended Complaint, Barch asserts various tort claims and alleges violations of various statutes and administrative rules by the Department.  Section 383-92 of the Hawaii Revised Statutes authorizes the Department director to "adopt, amend, or repeal such rules and regulations as the director deems necessary."  Section 383-30(5) of the Hawaii Revised Statutes and section 12-5-67 of the Hawaii Administrative Rules provide for an administrative penalty to be imposed by the Department if the Department finds that an individual "made a false statement or representation of a material fact knowing it to be false."  Section 12-5-47(a) of the Hawaii Administrative Rules states, "An individual shall be disqualified for benefits for voluntarily leaving work without good cause."  Chapters 92 and 92F of the Hawaii Revised Statutes govern public agency meetings, records, and practices, and have the common purpose of conducting "the formation and conduct of policy--the discussions, deliberations, decisions, and action of government agencies-- . . . as openly as possible."  Haw. Rev. Stat. §§ 91-1; 92F-2. Sections 710-1060 through -1063 of the Hawaii Revised Statutes fall under the Hawaii Penal Code and detail various dishonesty offenses.  Neither the State of Hawaii nor the Department has consented to being sued civilly in connection with these state laws.

Barch argues that the Department waived its sovereign immunity "by filing its Motion to Dismiss without specifying that it was appearing solely for that limited purpose."  Opp. at 8.

13

Barch cites <u>Lapides v. Board of Regents of the University System of Georgia</u>, 535 U.S. 613 (2002), in support of this proposition. However, in that case, the Court was faced with the narrow issue of "whether a State waives [sovereign] immunity when it removes a case from state court to federal court." <u>Lapides</u>, 535 U.S. at 618–19. Because a state that removes a case to federal court voluntarily invokes the jurisdiction of that court, the Supreme Court concluded that "the [defendant's] action joining the removing of this case to federal court waived its Eleventh Amendment immunity." <u>Id.</u> at 624. Here, the Department did not remove this action from state court, and <u>Lapides</u> therefore does not support Barch's argument that the State of Hawaii or the Department waived its sovereign immunity.

Barch also argues that <u>Ex Parte Young</u> applies in this case. Opp. at 7–8 (citing <u>Ex Parte Young</u>, 209 U.S. 123 (1908); <u>Idaho v. Coeur d'Alene Tribe of Idaho</u>, 521 U.S. 261 (1997)). "The doctrine of <u>Ex Parte Young</u>, which ensures that state officials do not employ the Eleventh Amendment as a means of avoiding compliance with federal law, is regarded as carving out a necessary exception to Eleventh Amendment immunity." <u>Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.</u>, 506 U.S. 139, 146 (1993). However, "the exception is narrow:  It applies only to prospective relief, does not permit judgments against state officers declaring that they violated federal law in the past, and has no application in suits against the States and their agencies, which are barred regardless of the relief

14

sought." Id. (internal citations omitted).  The Amended

Complaint does not name any state official as a defendant or seek

prospective relief.  The Ex Parte Young doctrine is therefore

inapplicable to this action.  As neither the State of Hawaii nor

the Department consented to being sued for Barch's state law

claims or waived sovereign immunity, the court dismisses those

claims.

        E.    The Court Dismisses Barch's Title II Claims.

        The Department also argues that it is immune from

Barch's Title II claims.  Motion at 5-6.  Alternatively, the

Department contends that Barch's Title II claims are barred by

the applicable two-year statute of limitations.[3]  Motion at 4-5.

In response, Barch argues that Congress validly abrogated

sovereign immunity for claims arising under Title II.  Opp. at

8-9; Supp. Opp. at 7-8.  Regarding the statute of limitations,

Barch asks this court to apply a four-year statute of

limitations.  Opp. at 6-7 (citing Jones v. R.R. Donnelley & Sons,

Co., 541 U.S. 369 (2004)).  The Department is not immune from

Barch's Title II claims, but the court dismisses them for failure

to allege that the Department's actions were motivated in any way

by Barch's prior disabilities.

_____

    [3] The Department also argues that Barch "fail[ed] to
plead exhaustion of administrative remedies with the EEOC."
Motion at 3.  The Department cites no legal authority for this
proposition, but the Ninth Circuit says, "There is no exhaustion
requirement for claims brought under Title II of the ADA."
Bogovich v. Sandoval, 189 F.3d 999, 1002 (9th Cir. 1999).

1.    The Department is Not Immune From Barch's
Title II Claims.

The Ninth Circuit has held that "Congress validly
abrogated the states' Eleventh Amendment sovereign immunity under
Title II." Miranda B. v. Kitzhaber, 328 F.3d 1181, 1185, (9th
Cir. 2003) (citing Clark v. California, 123 F.3d 1267, 1269 (9th
Cir. 1997)).  More recently, the Supreme Court addressed the
question of "whether Title II of the ADA validly abrogates state
sovereign immunity." United States v. Georgia, 126 S. Ct. 877,
880 (2006).  The Court concluded that, "insofar as Title II
creates a private cause of action for damages against the States
for conduct that actually violates the Fourteenth Amendment,
Title II validly abrogates state sovereign immunity." Id. at
882; see also Lightsy v. State of Hawaii, No. Civ. 05-00515
ACK/LEK, 2006 WL 314335, at *5 (D. Haw. Feb. 7, 2006) (concluding
that "Plaintiff's Title II claim against the State of Hawaii is
not barred by sovereign immunity" (citing Georgia, 126 S. Ct. at
882; Miranda B., 328 F.3d at 1185)).

Because Congress has validly abrogated state sovereign
immunity with respect to claims under Title II, the court rejects
the Department's argument that it is immune from those claims.

2.    Most of Barch's Title II Claims are Barred
by the Statute of Limitations.

"The ADA, like many federal civil rights statutes, does
not contain a specific statute of limitations." Soignier v. Am.
Bd. of Plastic Surgery, 92 F.3d 547, 550 (7th Cir. 1996) (citing
Wilson v. Garcia, 471 U.S. 261, 266-67 (1985)); see also Peckern

16

v. Holiday Quality Foods, Inc., 293 F.3d 1133, 1337 n.2 (9th Cir.
2002) ("the ADA does not contain a statute of limitations").
Consequently, courts must apply the statute of limitations of the
most analogous state law.  Peckern, 293 F.3d at 1137 n.2.

     Most civil rights actions are essentially claims to
vindicate injuries to personal rights.  Everett v. Cobb County
Sch. Dist., 138 F.3d 1407, 1409 (9th Cir. 1998) (citing Goodman
v. Lukens Steel Co., 482 U.S. 656, 661 (1987); Wilson, 471 U.S.
at 276).  Therefore, most circuit and district courts that have
adopted a statute of limitations for Title II claims have looked
to state statutes of limitations for personal injury actions.
Id. ("most circuits that have adopted a statute of limitations
for ADA . . . claims have looked to the state's limitations
period for personal injury actions" (citing Soignier, 92 F.3d at
551; Baker v. Bd. of Regents of Stat of Kan., 991 F.2d 628, 632
(10th Cir. 1993); Hickey v. Irving Indep. Sch. Dist., 976 F.2d
980, 982-83 (5th Cir. 1992); Morse v. Univ. of Vt., 973 F.2d 122,
127 (2d Cir. 1992)); see, e.g., Scott v. Garcia, 370 F. Supp. 2d
1056, 1064-65 (S.D. Cal. 2005) (applying California's one-year
statute of limitations for personal injury actions to claims
under Title II of the ADA); Smith v. City of Philadelphia, 345 F.
Supp. 2d 482, 485 (E.D. Pa. 2004) ("Claims under Title II of the
[ADA] are governed by the state statute of limitations for
personal injury claims."); Eber v. Harris County Hosp. Dist., 130
F. Supp. 2d 847, 870 (S.D. Tex. 2001) (applying the state statute
of limitations for personal injury claims to Title II claims);

Winfrey v. City of Chicago, 957 F. Supp. 1014, 1023 (N.D. Ill. 1997) (applying state statute of limitations for personal injury claims to Title II claims).  Hawaii's statute of limitations for personal injury actions is two years.  Haw. Rev. Stat. § 657-7 ("Actions for the recovery of compensation for damage or injury to persons or property shall be instituted within two years after the cause of action accrued."); cf. Cole v. State of Hawaii, No. Civ. 05-00325 JMS/BMK, 2006 WL 278595, at *4 (D. Haw. Jan. 25, 2006) (applying Haw. Rev. Stat. § 657-7 as the statute of limitations for §§ 1981 and 1983 claims).

Barch contends that this court should apply a four-year statute of limitations to his Title II claims.  Opp. at 6 (citing Jones, 541 U.S. 369).  In Jones, the Supreme Court noted that, in 1990, "Congress enacted a catchall 4-year statute of limitations for actions arising under federal statutes enacted after December 1, 1990."  Id. at 371 (citing 28 U.S.C. § 1658 ("a civil action arising under an Act of Congress enacted after [December 1, 1990] may not be commenced later than 4 years after the cause of action accrues")).  The Court concluded that "a cause of action 'arises under an Act of Congress enacted' after December 1, 1990--and therefore is governed by § 1658's 4-year statute of limitations--if the plaintiff's claim against the defendant was made possible by a post-1990 enactment."  Jones, 541 U.S. at 382.  The Court further noted that § 1658 "leaves in place the 'borrowed' limitations periods for preexisting causes of action.'"  Id.  As Barch's Title II claims for discrimination

18

are governed by 42 U.S.C. § 12132, which was enacted on July 26, 1990 and has not been amended since, the four-year statute of limitations in § 1658 is inapplicable to Barch's Title II claims.

Barch asserts that he suffered "permanent and total disability" as a result of the Title II violations.  Am. Complaint at 4-5, 23-28.  It is therefore appropriate in this case to follow other federal courts that have applied state statutes of limitations for personal injury actions to claims under Title II of the ADA.  Cf. Stanley v. Trs. of Cal. State Univ., 433 F.3d 1129, 1135 (9th Cir. 2006) ("The essential inquiry for statute of limitations 'borrowing' is the nature of the harm alleged.").  Thus, the court applies Hawaii's two-year statute of limitations for personal injury actions to Barch's Title II claims.  See Haw. Rev. Stat. § 657-7; Everett, 138 F.3d at 1409.

Although the court looks to state law for the applicable limitations period, federal law determines when a cause of action based on a federal statute accrues.  See Morales v. City of Los Angeles, 214 F.3d 1151, 1153-54 (9th Cir. 2000). "The touchstone for determining the commencement of the limitations period is notice:  'a cause of action generally accrues when a plaintiff knows or has reason to know of the injury which is the basis of his action.'"  Stanley, 433 F.3d at 1136; see also Morales, 214 F.3d at 1154 ("under federal law, a claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action").  "The proper focus

19

is upon the time of the discriminatory acts, not upon the time at which the consequences of the acts became most painful." Stanley, 433 F.3d at 1136 (citing Abramson v. Univ. of Haw., 594 F.2d 202, 209 (9th Cir. 1979)).

Barch filed the original Complaint on December 6, 2004. Thus, Barch's Title II claims are barred if the discriminatory acts accrued more than two years prior to that date.  In other words, only Title II claims that Barch knew about or had reason to know about since December 6, 2002, are not barred by the statute of limitations.  See Morales, 214 F.3d at 1154.

In the Amended Complaint, Barch says that the Department "intentionally violated [his] legal and civil rights numerous times from at least December 2000 through the present, August 2006 []and ongoingly [sic]."  Am. Complaint ¶ 24. Nevertheless, of all the allegations in the Amended Complaint, only two of the Title II claims fall within the limitations period:  (1) Barch's allegation that Pang lied to a state court judge during the circuit court proceedings in September 2003; and (2) the allegation that, in March 2005, Rack failed to inform CRC investigators that "Mr. Jackson had told Ms. Pang that she and Mr. Rack had, in fact, violated [Barch's] legal and civil rights at least 13 times for an entire year."[4]  Am. Complaint ¶¶ 21-22.

---

[4] At the hearing on this matter, Barch clarified that the claims in paragraphs 21 and 22 of the Amended Complaint are brought under Title II of the ADA.  Further, although Barch's claim in paragraph 23 of the Amended Complaint falls within the limitations period, Barch clarified at the hearing that this

Therefore, these two claims are the only Title II claims asserted in the Amended Complaint that fall within the limitations period.

> 3.    Barch Does Not Allege that the Department's
>       Actions Were Motivated in Part by His
>       <u>Disabilities.</u>

Title II of the ADA provides, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.  To support a disability discrimination claim under Title II, a plaintiff must establish, among other things, that the plaintiff's disability was a "motivating factor" underlying the defendant's adverse actions.  <u>Head v. Glacier Nw., Inc.</u>, 413 F.3d 1053, 1063 (9th Cir. 2005) ("We hold that the ADA causation standard is a motivating factor standard."); <u>see also</u> <u>Josephs v. Pac. Bell</u>, 443 F.3d 1050, 1065 n.7 (9th Cir. 2006) ("We recently decided that 'the ADA causation standard is a motivating factor standard.'"); <u>Shields v. BCI Coca-Cola Bottling Co. of Los Angeles</u>, No. C04-928JLR, 2005 WL 2045887, at *7 (W.D. Wash. Aug.

---

claim is brought under FOIA, not Title II of the ADA.

Barch also said at the hearing that he had injuries that only accrued after December 6, 2002.  He argues that claims relating to those injuries are not time-barred.  The Amended Complaint does not clearly identify such injuries.  In any event, as discussed later in this order, no claims allege the necessary link to discrimination based on disability.

25, 2005) ("The disability need not be the sole factor behind the adverse action, but must be a motivating factor.").

In the Amended Complaint, Barch does not expressly claim a violation of Title II of the ADA, but alludes to claims under Title II in his opposition memoranda. Reading Barch's pleadings liberally, the court assumes that every claim in the Amended Complaint, except for the FOIA claim that Barch expressly stated is <u>not</u> brought under the ADA, is brought under Title II. See <u>Balistreri v. Pacifica Police Dept.</u>, 901 F.2d 696, 699 (9th Cir. 1990) ("pro se pleadings are liberally construed, particularly where civil rights claims are involved"). However, nothing in the Amended Complaint suggests that the Department's actions were in any way motivated by Barch's prior disabilities. Barch does not allege any facts that could be read liberally to claim that the Department's actions were motivated at all by his disabilities. Because Barch has not alleged the necessary causal connection between the Department's actions and Barch's prior disabilities, the court dismisses all of Barch's Title II claims, including those that are not barred by the statute of limitations. <u>Cf.</u> <u>Richards v. Harper</u>, 864 F.2d 85, 88 (9th Cir. 1988) ("Even under our liberal standard for evaluating the dismissal of a <u>pro se</u> action, . . . [w]e do not supply essential elements of a claim that were not initially pleaded."); <u>Ivey v. Bd. of Regents of Univ. of Alaska</u>, 673 F.2d 266, 268 (9th Cir. 1982) ("The standard used to evaluate a motion to dismiss is a

liberal one, particularly when the action has been filed <u>pro</u> <u>se</u>.
However, a liberal interpretation of a civil rights complaint may
not supply essential elements of the claim that were not
initially pled." (internal citation omitted)).

        Although the court dismisses Barch's Title II claims,
as discussed below, Barch may seek leave to file a Second Amended
Complaint.  If Barch can cure the deficiencies of the Title II
claims asserted in the Amended Complaint, he may seek to
resurrect those claims in a Second Amended Complaint.

        F.    The Court Dismisses Barch's FOIA Claim For
              Failure to Exhaust.

        At the hearing on this matter, Barch clarified that he
asserts a claim under FOIA in paragraph 23 of the Amended
Complaint.  In that paragraph, Barch says that he requested
documents from the Department on July 13, 2006, and that the
Department "finally responded to [his] FOIA request" on August
17, 2006.  Am. Complaint ¶ 23.  Barch alleges that the Department
"withheld most of the documents that [he] requested" and
"claim[ed] that 'we do not have and do not know whether some of
the documents requested ever existed.'"  Am. Complaint ¶ 23.  The
court dismisses Barch's FOIA claim for failure to exhaust
administrative remedies.

        "Exhaustion of a parties' [sic] administrative remedies
is required under the FOIA before that party can seek judicial
review."  <u>In re Steele</u>, 799 F.2d 461, 465 (9th Cir. 1986).  "Prior
to instituting suit in district court, the complainant must

23

request specific information from the agency in accordance with
published administrative procedures, have the request improperly
refused, file an administrative appeal and present proof that she
or he exhausted all administrative remedies." Olsen v. United
States Dep't of Transp. Fed. Transit Admin., No. C 02-00673 WHA,
2002 WL 31738794, at *2 (N.D. Cal. Dec. 2, 2002); see also
Gasparutti v. United States, 22 F. Supp. 2d 1114, 1116 (C.D. Cal.
1998) ("In order to maintain a judicial action under FOIA, a
plaintiff must first request documents from an administrative
agency and if his request for documents is refused must exhaust
his administrative remedies before filing a court action."),
"Where a plaintiff has not complied with these procedures,
district courts lack jurisdiction over the claim under the
exhaustion doctrine and will dismiss the claim for lack of
subject matter jurisdiction." Gasparutti, 22 F. Supp. 2d at
1116; cf. Steele, 799 F.2d at 466 (noting that the purposes
underlying the exhaustion doctrine include "the opportunity for
the agency to exercise its discretion and expertise and the
opportunity to make a record for the district court to review"
(emphasis in original)).

        Courts have dismissed FOIA claims where a complaint
fails to allege exhaustion of administrative remedies.
Gasparutti, 22 F. Supp. 2d at 1115-16 ("[T]he court concludes
that it lacks subject matter jurisdiction over Gasparutti's FOIA
claims which request documents from IRS because he has failed to

allege a request, refusal and exhaustion of his administrative remedies."); see also Bestor v. Cent. Intelligence Agency, No. Civ.A. 04-2049RWR, 2005 WL 3273723, at *3 (D.D.C. Sept. 1, 2005) ("In any event, by failing to allege or demonstrate exhaustion of administrative remedies, plaintiff has failed . . . to state a claim upon which relief may be granted.  No FOIA claim is stated in the absence of an allegation that the requester exhausted his administrative remedies."); Caraveo v. Nielson Media Research, Inc., No. 01Civ.9609 LBSRLE, 2003 WL 169767, at *12 (S.D.N.Y. Jan. 22, 2003) (dismissing a FOIA claim because the "complaint does not allege that he exhausted his administrative remedies as the FOIA requires").

In the present case, even taking as true Barch's allegation that his request for documents was improperly denied, the current record lacks any suggestion that Barch exhausted his administrative remedies prior to filing this lawsuit.  Indeed, Barch made his FOIA request after commencing this action. Moreover, Barch seeks only money damages and incidental fees and costs in the Amended Complaint, but "FOIA does not provide a remedy of money damages."  Johnson v. Comm'r of Internal Revenue, 239 F. Supp. 2d 1125, 1138 (W.D. Wash. 2002) (citing Lake Mohave Boat Owners Assoc. v. Nat'l Park Serv., 78 F.3d 1360, 1363 n.1 (9th Cir. 1995)); see also 552 U.S.C. § 4(B) (noting that the district court "has jurisdiction to enjoin the agency from withholding agency records and to order the production of any

25

agency records improperly withheld from the complainant"). The court therefore dismisses the FOIA claim. However, if Barch somehow exhausted his administrative remedies before filing this lawsuit, he may move for leave to file a Second Amended Complaint to properly allege his FOIA claim. If he did not exhaust before filing his original Complaint, however, subsequent exhaustion will not cure this defect. See Olsen, 2002 WL 31738794, at *2 ("Prior to instituting suit in district court, the complainant must . . . file an administrative appeal and present proof that she or he exhausted all administrative remedies."); Trenerry v. Internal Revenue Serv., No. 94-C-92-K, 1994 WL 714063 (N.D. Okla. Sept. 13, 1994) ("Until [the plaintiff] has exhausted the remedies provided within the regulations as set forth herein, this action is premature. . . . This action is dismissed without prejudice to plaintiff's filing of a new civil action, upon exhaustion of administrative remedies.").

V.        CONCLUSION.

          The court grants the Department's motion to dismiss the Amended Complaint. However, judgment will not be entered against Barch and the case will not be closed until January 31, 2007. In the meantime, Barch may seek leave with the Magistrate Judge to file a Second Amended Complaint to assert new parties, claims, or requests for relief, or to cure deficiencies in the claims asserted in the Amended Complaint. The court finds that delaying entry of judgment until January 31, 2007, will provide Barch

enough time to file a motion for leave to file a Second Amended Complaint and to appeal the Magistrate Judge's decision to this court if his motion is denied. If Barch does not move for leave to file a Second Amended Complaint or if Barch is denied leave by this court, judgment will automatically be entered and the case will be closed on January 31, 2007.

        IT IS SO ORDERED.

        DATED:  Honolulu, Hawaii, October 26, 2006.



_____
Susan Oki Mollway
United States District Judge

**Barch v. State of Hawaii Department of Labor & Industrial Relations, et al., Civ. No. 04-00712 SOM/BMK; AMENDED ORDER GRANTING DEFENDANT'S MOTION TO DISMISS.**

27