EXHIBIT "A"

JAMES A. BARCH

Plaintiff Pro Se

16101 Escobar Avenue

Los Gatos, CA 95032

(408) 978-5727

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| JAMES A. BARCH, ) | CIVIL NO. 04-00712 SOM-BMK |
| Plaintiff, ) | (Other Civil Action) |
| vs. ) | |
| ) | PROPOSED SECOND AMENDED |
| STATE OF HAWAII DEPARTMENT OF LABOR ) | COMPLAINT |
| & INDUSTRIAL RELATIONS; ) | |
| Defendants. ) | |

PROPOSED AMENDED COMPLAINT

On October 26, 2006, the Honorable Judge Susan Oki Mollway issued her "Amended Order Granting Defendant's Motion To Dismiss." In her Order, Judge Mollway granted Plaintiff the right to file a Second Amended Complaint. On page 20 of her Order, Judge Mollway ruled that only two of Plaintiff's many complaints fall within the statute of limitations: 1) that Pang lied to a state court judge [regarding Plaintiff's case] in September 2003; and 2) that in March 2005, Rack failed to inform CRC investigators that DLIR's own civil rights expert, Mr. Tom

11

Jackson, had told Pang that she and Rack had violated Plaintiff's legal and civil rights 13 times for an entire year.

Plaintiff hereby argues that Pang's and Rack's said misconduct intentionally violated Plaintiff's legal and civil rights, were part of a conspiracy to do so by several top DLIR officials (including also then- Director Leonard Agor and Assistant Attorney General Frances Lum), and caused Plaintiff new and additional stresses, illnesses, pain and suffering, and life losses.

Judge Mollway noted that Plaintiff had so far failed to claim that either the wrongful acts by Rack, Pang, Agor, and Lum, or the resulting damages, were liked to "discrimination based on disability." However Judge Mollway granted Plaintiff the right to correct this deficiency in a Second Amended Complaint. Plaintiff hereby asserts that this link does exist. However, Plaintiff is currently prevented from proving such a link by four facts: 1) DLIR's current Director, Nelson Befitel, refuses to release several internal DLIR documents and other evidence that is vital to Plaintiff's ability to formulate a legally adequate Second Amended Complaint, including proving "discrimination based on disability"; 2) Mr. Befitel and DLIR have also refused Plaintiff's repeated requests to be informed about how to appeal Mr. Befitel's and DLIR's refusal to release vital evidence to Plaintiff; 3) since Plaintiff is a totally disabled non-attorney, Plaintiff has been unable to find out how (and to whom) to make an appeal to obtain these internal DLIR documents; 4) Plaintiff has been instructed by the Honorable Judge Barry M. Kurren not to include any of DLIR's alleged wrongful acts that are not within the statute of limitations in Plaintiff's Proposed Second Amended Complaint.

Plaintiff respectfully requests that Judge Kurren remove the above four obstacles so that Plaintiff can file a legally adequate Proposed Second (or Third) Amended Complaint. E.g., since Plaintiff has been denied basic information on how and where to appeal DLIR's denial of most

12

of Plaintiff's FOIA Request, Plaintiff can't be required to "exhaust administrative remedies." At the very least, Plaintiff asks this Court to tell Plaintiff how & where to appeal an FOIA denial.

Unless Plaintiff possesses all of the relevant internal DLIR evidence, and unless Plaintiff can describe the long and undeniable pattern of intentional misconduct by several top DLIR officials, Plaintiff will be unfairly prevented from showing sufficient evidence to persuade this Court to proceed with Plaintiff's case.

For example, the accused top DLIR officials are shrewd enough not to have declared on any public record that they "discriminate based on disability." So how is the Plaintiff expected to provide evidence of this legally required link? The Plaintiff will be able to demonstrate the vital link <u>only if</u> the Plaintiff gets the Court's assistance in obtaining internal DLIR evidence, and gets the Court's permission to describe DLIR's long, egregious pattern of violating numerous rules and laws of the DLIR, the State of Hawaii, and the United States.

Other U.S. Courts have ruled in previous case law that a Plaintiff need not possess overt evidence of "discrimination based on disability" because few Defendants are foolish enough to expose themselves so fatally. Instead, federal courts have ruled that it is sufficient for a Plaintiff to provide enough evidence to convince a judge or jury that "discrimination based on disability" can be <u>inferred</u>. How? By <u>internal</u> documents or oral remarks, and by a <u>history</u> of misconduct.

Therefore, Plaintiff requests that this Court obtain all internal DLIR evidence that pertains to Plaintiff and Plaintiff's cases against DLIR, review these documents "in camera", and release to Plaintiff any evidence that Plaintiff has a legal right to posses. Similarly, Plaintiff requests that this Court allow Plaintiff to describe the long pattern of wrongful acts by DLIR, even if these acts occurred outside the statute of limitations. Plaintiff does not ask that such acts be adjudicated as if they were within the statute of limitations, but only that such acts be allowed

to demonstrate a pattern from which "discrimination based on disability" can be inferred. Plaintiff also requests the right to file a Third Amended Complaint if the Plaintiff obtains the internal DLIR evidence and receives the right to describe the pattern of DLIR wrongful acts.

It seems logical and just that the legally required "link" of "discrimination based on disability" must not be required of the Plaintiff if the Court and the Defendants simultaneously deny the Plaintiff the evidence and the history to demonstrate the legally required "link."

Despite the above four obstacles, Plaintiff can at least argue the following points:

1) In September 2003, Pang had knowingly violated the Court's Order to submit to the Court copies of all of the audio tapes of Plaintiff's ESARO appeal hearings. Pang and Rack had been given a clearly stated Court Order of this requirement in August 2001 – and for over two years, Pang and Rack had violated this part of the Court Order. The Plaintiff sent Pang and Rack reminders of this required evidence in September 2001, in a 2002 Motion, and in 2003. Rack had lied to the Court in 2002 that DLIR had sent the Court all of the evidence, when DLIR had not done so. Pang also lied to the Court in September 12003 when she falsely claimed that she had been unaware of the Court Order! A formal Court Order, three reminders, and two years to comply make it appear that Pang lied to the Court about not knowing. "Ignorance is no excuse under the law" –especially for a high-ranking official with years of experience with the legal requirements of her job.

2) Pang's and Rack's lies to the Court (and withholding of the Court-Ordered tapes until 4:45 P.M. the Friday before the hearing on the following Monday at 8:00 A.M.) prevented the Court from being able to listen to any of the tapes, which the Plaintiff had referred to in his complaint and/or motions.

14

3) Pang's lies and withholding of evidence aggravated Plaintiff's stress-caused illnesses, and contributed to Plaintiff losing his case, which aggravated Plaintiff's stress-caused illnesses catastrophically. (Plaintiff's illnesses "exploded" in number and severity two months later, and Plaintiff's health has never recovered to its pre-trial level.) Pang's lies and withholding of evidence also aggravated Plaintiff's stress-caused illnesses by forcing Plaintiff to continue his stressful pursuit of truth and justice from September 2003 to the present (April 2007) – over 3 ½ years of additional pain, suffering, and worsening health and life losses. (For example, during this period, Plaintiff developed autoimmune inner-ear disease, was forced to take high doses of Prednisone for numerous months, developed Prednisone-induced diabetes (which persists despite stopping Prednisone after 3 years), two retina diseases, early stage glaucoma, whole-body arthritic-like pain and loss of motion, two "frozen" shoulders, painful and crippling sciatica, and other "downward spiral" damages from chronic stress and degenerative diseases.

4) Rack's (and Pang's, Lum's, and Agor's) lies to, and withholding of evidence and material facts from, federal investigators at CRC in October 2002 had the same damaging effects on Plaintiff's legal rights, physical health, and life losses.

5) In October 2002, Agor replied to CRC and knowingly withheld from CRC the legal memos that Lum and Pang had submitted to Agor about Plaintiff's legal rights in Spring 2002 (only 6 months before). Agor also failed to tell CRC that DLIR's legal expert, Tom Jackson, had carefully determined that Rack and Pang had violated Plaintiff's legal and civil rights. Agor also failed to tell CRC that Lum had instructed Jackson not to put his legal opinion in writing (as DLIR rules usually required). (Lum intentionally prevented documentation of DLIR's violation of Plaintiff's civil rights, and prevented documentation reviewable by the Courts);

15

6) In October 2002, Pang also committed all of the above unlawful acts that Agor committed. In addition, Pang made false statements and withheld material facts from CRC;

7) In October 2002, Rack also committed all of the above unlawful acts that Agor and Pang committed. Likewise, Rack made false statements and withheld material facts from CRC;

8) The documented fact that Agor, Pang, and Rack all committed the same lies and withholding of documents and material facts from CRC's federal investigators all in October 2002, strongly indicates a conspiracy to plan and enact coordinated statements (and silences) that would not contradict each other. This fraud and obstruction of justice by <u>four</u> top DLIR officials, not just one.

9) Plaintiff argues that Rack's letter to CRC in March 2005 inquiring about the status of CRC's 3¼ year-old investigation "opened the door" and "renewed and extended" the statute of limitations on Rack's (and Pang's, and Agor's) lies to, and withholding of evidence and material facts from, federal investigators at CRC in October 2002.

10) At the very least, Plaintiff requests that this Court give Plaintiff permission to describe Rack's intentional, overwhelmingly numerous, and undeniable pattern of law-violating acts so that Plaintiff receives a fair chance to demonstrate that "motivating factors" involving and related to "discrimination based on disability" by Rack (and DLIR) are convincingly "inferable."

11) Plaintiff hereby states explicitly that Plaintiff's claims are brought under Title II of the ADA, as well as all other laws that pertain to the law-violating acts by Rack, Pang, Lum, and Agor.

12) To err on the side of necessary facts and evidence, Plaintiff hereby ask the Court's permission to at least briefly mention a ten supporting incidents to indicate Rack's "inferable" "motivating factors" involving and related to "discrimination based on disability."

16

A) From beginning to end, Rack displayed an inexcusable hostility and antagonism toward Plaintiff that was palpable and blatant by Rack's <u>yelling</u> at Plaintiff around 3-15-01 and 3-22-01, and by Rack's numerous law-violating acts that favored my opponents and discriminated against me.

B) Throughout all of December 2000, Rack and Pang repeatedly and blatantly disregarded Plaintiff's repeated claim of total disability, including Plaintiff's citing of his having legal and civil rights under the ADA;

C) On 12-6-00, Pang inexcusably disregarded a letter from my doctor stating that I was legally and medically totally disabled, and that the stress of appeal hearings would be "medically contra-indicated" for me, and requesting Pang to postpone my hearings;

D) On 12-14-00, Rack agreed by his silence to my ex-boss's defense attorney's outrageous assertion that my total disability status from the Social Security Administration and the State Department of Human Services didn't give me disability protections before ESARO;

E) Also on 12-14-00, Rack blatantly dismissed my disability rights and requests by saying that, in his opinion, I only claimed that I was disabled to postpone my own appeal hearings (which was a lie and baseless). Rack later admitted he had no education in stress-disability.

F) Pang was told by Tom Jackson around 12-28-00 that the ADA legally required her to postpone my appeal "for as long as medically necessary." According to Jackson, Pang got angry, and complained about the ADA. She then failed to follow Jackson's expert legal advice and the ADA's legal requirements;

G) Rack reviewed 500 pages of my medical records in February 2001, knew how ill I was, knew I would be made sicker if I was forced to endure months of hearing stress – and

intentionally failed to postpone my appeal as I had requested, as my doctor requested, and as the ADA required. Rack forced me to endure chronic stress – and I got much sicker.

H) Rack blatantly and maliciously violated one of my most fundamental legal rights under Hawaii law and DLIR rules by denying my request to review my ESARO records to prepare for my final hearings just five days later. An ESARO aide witnessed this crime;

I) Rack refused to consider over 200 pages of evidence of perjury and fraud by my ex-employer's four main employee-witnesses. Thereby, Rack knowingly based his denial of my unemployment benefits on lies and crimes – thus denying me a fair and full hearing;

J) Rack and Pang knowingly and maliciously violated two different Hawaii laws and DLIR rules by denying me access to my own records 13 times for over a year. They were eventually overruled by DLIR's Assistant Attorney General and Director Agor. They were also found guilty of violating my legal and civil rights by DLIR's expert on civil rights, Tom Jackson.

K) In sum, these are just ten of literally dozens of hostile, discriminatory, unlawful acts by Rack (and Pang, Lum, and Agor). Even just these ten incidents strongly indicate "inferable" "motivating factors" that involve "discrimination based on disability." I ask this Court to please permit me to list the entire history, so that I receive a fair chance to demonstrate the legally required "link" between my disability and DLIR's discrimination.

DATED:   Los Gatos, California, April 7, 2007

*James A. Barch*

JAMES A. BARCH,

Plaintiff Pro Se

18